PISCATAWAY APARTMENT ASSOCIATION, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS APPELLANT, v. THE TOWNSHIP OF PISCATAWAY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 19, 1973—Decided March 13, 1974.

84

Before Judges Leonard, Allcorn and Crahay.

Mr. *M. Roy Oake* argued the cause for the appellant.

Mr. *Frederick C. Mezey* argued the cause for the respondent (*Mezey & Mezey*, attorneys).

Per Curiam. ▉ A review of the entire record convinces us that the plaintiff has not sustained the burden of establishing that the sanitary sewer rates here challenged were unreasonable or unfairly discriminatory in their application to

multi-family (apartment) dwellings. This quite apart from any questions as to the standing of the plaintiff to initiate and maintain this proceeding in lieu of prerogative writ, as to the quantum and quality of proof of the alleged assignments of the claims for overpayment, or as to whether there was a waiver by the owners of the claimed overpayments occurring prior to the commencement of this proceeding.

In brief, the hypotheses and the formula proposed by plaintiff to demonstrate the asserted inequity and unreasonableness of the rate and, at the same time, to serve as the base upon which sewer charges should be assessed to cover both operational expenses and capital charges, at best were unconvincing. They were presented by plaintiff's witness Aurnhammer, a licensed civil engineer, planner and land surveyor, whose experience with sewer was limited almost entirely (85% to 90%) to the design and construction supervision of sewers in land development projects for private developers, and who was without any experience whatever in rate structuring or in the determination or fixing of rates for any publicly operated sewer system.

Founded upon a number of arbitrary benefit-cost allocations of capital and operating expenses devised by Mr. Aurnhammer, the formula was also of dubious practical application or use. Indeed, during cross-examination, Mr. Aurnhammer conceded (as did counsel for the plaintiff at oral argument) that in his experience he was unaware of a single sewer system operated by a municipality or other public agency which had previously adopted or was presently utilizing the same or any similar formula in the structuring or assessment of rates for use of the system. *N. J. S. A.* 40:63-7. *Compare, Landy v. Bellmawr Sewerage Auth.,* 61 *N. J. Super.* 396 (App. Div. 1960) ; *see, generally, Airwick Industries, Inc. v. Carlstadt Sewerage Auth.,* 57 *N. J.* 107 (1970), appeal dismissed 402 *U. S.* 967, 91 S. Ct. 1666, 29 L. Ed. 2d 132 (1971).

The plaintiff's other expert, an accountant with minimal experience and familarity with municipal or other public

agency accounting, also could not cite a single instance in which a formula the same or similar to that proposed by Mr. Aurnhammer had been or was being utilized by any New Jersey municipality. More significantly, he failed to underwrite either the soundness or the workability of it — confining himself to a certification simply of the correctness of the arithmetic involved in the computations made by Mr. Aurnhammer; and this on the assumption that the latter's basic data were valid and accurate.

It may very well be that a sanitary sewer rate or charge fixed according to actual usage determined by metering the flow of sewage of each user or determined by close approximation from measured water consumption adjusted for customary and known variables, would be more nearly equitable methods or bases. However this may be, we express no opinion thereon. We note only that, even in this area, plaintiff's proofs were lacking. Thus, despite the fact that, under the plaintiff's hypotheses, it was essential to establish an asserted differential in average water consumption between a one family dwelling and a single dwelling unit in a multi-family dwelling, the supporting evidence consisted of no more than conclusory computations, assertedly founded upon a single sampling of water-meter readings from a selected area or areas, during one three-month period — which readings and usage figures themselves (although promised) apparently were never produced or disclosed to the court during the course of the trial.

In light of the foregoing, the judgment in favor of the plaintiff must be reversed, and the complaint dismissed. Whatever may be the merits of the counterclaim on which the defendant had judgment against the plaintiff on account of the connection charges, said judgment could operate only as a set-off pro tanto to any recovery awarded to this plaintiff against the defendant, inasmuch as the plaintiff is not now and was not at any time the owner of any of the lands and buildings against which such charges were assessed and upon which there may be a lien. *N. J. S. A.* 40:63–8. *See,*

*Airwick Industries, Inc. v. Carlstadt Sewerage Auth.*, 57 *N. J.* 107 (1970), appeal dismissed 402 *U. S.* 967, 91 S. Ct. 1666, 29 *L.* Ed. 2d 132 (1971). Consequently, the judgment in favor of the defendant and against the plaintiff on the counterclaim likewise must be reversed and the counterclaim dismissed, without prejudice however to the reassertion of the claim against the proper parties, in an appropriate proceeding.

Accordingly, the judgment for plaintiff on the complaint and the judgment for the defendant on the counterclaim, respectively, hereby are reversed.