178 N.J. Super. 109 (1981)
428 A.2d 508
PHOENIX ASSOCIATES, INC., A NEW JERSEY CORP., AND PHOENIX ASSOCIATES, LTD., A LIMITED PARTNERSHIP OF THE STATE OF NEW JERSEY, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
EDGEWATER PARK SEWERAGE AUTHORITY, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
WILLINGBORO MUNICIPAL UTILITIES AUTHORITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 2, 1981.
Decided February 20, 1981.
As Corrected March 25, 1981.
*111 Before Judges SEIDMAN, ANTELL and LANE.
Roger P. Main, attorney for defendant and third-party plaintiff-appellant and cross-respondent Edgewater Park Sewerage Authority.
DuBois, Maiale, Sheehan & DuBois, attorneys for plaintiffs-respondents and cross-appellants (Josiah E. DuBois, Jr., on the brief).
Steven E. Heath, attorney for third-party defendant-respondent Willingboro Municipal Utilities Authority.
*112 PER CURIAM.
Defendant Edgewater Park Sewerage Authority (Edgewater) is appealing from the whole of the final judgment entered by the Law Division directing defendant to establish a new rate schedule for sewer service so that apartment units having one and two bedrooms would not pay an annual rate for sewer service over two-thirds of that paid by single-family dwellings and denying relief on the third-party complaint. Plaintiffs, The Phoenix Apartments, Inc. and Phoenix Associates, Ltd., are appealing from that portion of the final judgment which denied damages. We reverse plaintiffs' judgment.
Plaintiffs filed a complaint in lieu of prerogative writs against Edgewater alleging that the action of defendant in charging one- and two-bedroom apartment units the same annual fee for sewer service as it charges single-family residences and condominium units containing at least three bedrooms was arbitrary, inequitable and discriminatory. They sought to have defendant directed to reduce the annual sewer charge made for apartment units to no more than two-thirds of the charge for the single-family residences and condominium units. In addition, plaintiffs sought to be reimbursed for sewer service charges paid that exceeded what is determined by the court to be fair and equitable for one- and two-bedroom apartment units. Edgewater filed a third-party complaint against Willingboro Municipal Utilities Authority (Willingboro) seeking to have third-party defendant directed to reduce the annual sewerage treatment charge proportionately to the amount awarded plaintiffs and for money damages in an amount equivalent to the amount that the court deemed to be charges which exceeded what was fair and equitable.
Since Edgewater does not have its own sewerage treatment facilities, it entered into an agreement with Willingboro for treatment of sewage under a 40-year contract. A "domestic house connection" included any individual family or dwelling unit, including an apartment unit. The rate schedule agreed *113 upon was subject to adjustment only if the rates prevailing in Willingboro were subsequently altered, and then Edgewater's rates would be adjusted on a dollar-per-dollar basis. Edgewater charges a flat annual rate to users of its sewer system and makes no distinction between apartments and single-family dwellings.
The Phoenix Apartments were connected to the Edgewater system during the fall of 1968. The apartment complex is on a 50-acre tract and consists of about 55 buildings. The apartments were completed in 1971 and contain 446 residential units, 328 one-bedroom units and 118 two-bedroom units, including town houses.
In 1978 Edgewater Park had a population of about 8,500 residents. It had 1,540 single-family residences, of which 10 had one bedroom, 57 had two bedrooms and the balance of 1,473 had three or more bedrooms. It also had 1,298 apartments and 488 condominium units, of which 75% had one bedroom and the balance, two bedrooms. As of December 1, 1977 there were 1,332 single-family residences connected to Edgewater's sewerage system. At that time there were 1,298 apartment units and 466 condominium units connected to the system. For the year ending November 30, 1977, Edgewater's total budget was $198,750. It paid Willingboro $124,111.28. For 1978 Edgewater's total budget was $227,550. It paid Willingboro that year $126,313.13.
Norman Wolgin, the original builder and developer of the apartments, testified that he kept monthly rent rolls on all 446 units, showing how many people resided in an apartment, the approximate age, name, rent and the date of the lease, because the county health board required such record. The records were prepared by his office personnel, and he reviewed them every couple of months. The trial judge permitted the introduction of these documents, stating that they were business records kept in the regular course of business under Wolgin's supervision. The rent rolls were essential to the expert opinion of Bennett Levin, *114 a professional engineer called by plaintiffs. Levin testified that there was a monthly average of 694 people residing in the apartment complex, for a total of 1.56 persons per dwelling unit. He applied that figure against the 1,786 apartments in the township and evolved a population of 2,786 people residing in apartments. He then concluded that 5,713 people resided in single-family dwellings, or an average of 3.71 persons per single-family dwelling. Gerald Speitel, a professional engineer, testified that in his opinion one- and two-bedroom apartments should not pay the same amount of the fixed costs because the apartments paid their own money to construct the internal facilities and because they have much fewer residents per unit than a single-family dwelling. He felt that apartments should pay about two-thirds of the charge that single-family residences pay. From his survey of 332 single-family residences served by New Jersey Water Company, he concluded that the average home used 243 gallons a day. Combining his survey with one prepared by the defense, he concluded that a single-family residence used 230 gallons a day, whereas an apartment used 154 gallons a day. From this he concluded that an apartment used 67% of the water used by a single-family residence.
William G. Major, a professional engineer and land surveyor who is the consulting engineer for Edgewater, testified there were budgetary items not related to flow, such as fixed costs for salaries of board members, insurance, trustee fees, debt service and principal-interest. Harry S. Allen, president of Charles J. Kupper, Inc., testified that greater emphasis should be placed on service than on use of the sewerage system because the system is designed to serve 24 hours a day and whether the system is in extreme use or not by a given user. Based on a review of water use and waste water flow for apartments and houses, he said he found that it did not provide a distinct classification of user. Only 12.6% of the total Edgewater budget was variable or flow-dependent. Herbert S. Krugman, a consultant specializing in utility rates, cost of service and financial analysis, testified that water consumption was not necessarily the best or most *115 equitable method of determining sewerage service charges because costs were being incurred to measure a very small, variable element, and a complicated rate schedule was being set up. For Edgewater's system he determined the fixed costs per unit for all types of users to be $86.13, which includes only 12 cents for the variable element. The optimum goal that rates and rate designers should achieve is to attempt to bill fairly and equitably in an easy, understandable manner, at least cost.
The trial judge concluded that apartments have a sewage flow substantially less than dwellings in Edgewater Park. The difference between dwellings and apartments in sewage flow was significant and bore a direct relationship to "use or service." He concluded there was discrimination. He opined that the water consumption figures provided adequate support for this determination. The judge ruled that plaintiffs were entitled to prospective relief only, stating that the evidence showed that sewer charges were components of rents collected by plaintiffs from their tenants. The judgment directed Edgewater to establish new rates for apartments and dwellings, with the new rates reflecting a difference between dwellings and apartments of at least one-third in favor of the apartments. Concerning the contract between Willingboro and Edgewater, the judge held that it was fair and did not require change.
Edgewater argues that the rent rolls were not admissible into evidence because they constituted hearsay and there was an inadequate foundation presented to allow their admission under the business entries exception of Evid.R. 63(13). Plaintiffs did not show the method of preparation which would have justified allowing the documents into evidence. The record is devoid of any compelling duty upon the party to give trustworthy answers. Norman Wolgin, manager of Phoenix Apartments for several years, testified that he kept the rent rolls because they were required by the county board of health. The monthly rent rolls showed the names of the occupants of the apartments, the type of apartment, the date of the lease, the number of persons residing therein, whether the occupants were over age 55, the *116 current rent and the possible rent. Wolgin said that the records were prepared by office personnel and that he would review them every couple of months.
Evid.R. 63(13) provides:
A writing offered as a memorandum of record of acts, conditions or events is admissible to prove the facts stated therein if the writing or the record upon which it is based was made in the regular course of a business, at or about the time of the act, condition or event recorded, and if the sources of information from which it was made and the method and circumstances of its preparation were such as to justify its admission.
This rule reflects the realization that records trusted and relied upon by businessmen are indispensable in commercial litigation even though they do not meet prior technical judicial standards for admissibility. Mahoney v. Minsky, 39 N.J. 208, 218 (1963). The fact that the records may be self-serving does not affect their admissibility. Id. at 219; Stott v. Greengos, 95 N.J. Super. 96, 100 (App.Div. 1967).
In State v. Lungsford, 167 N.J. Super. 296, 309 (App.Div. 1979), the court said that it was clear that one of the critical circumstances importing reliability is the fact that the informant whose declaration is so recorded is under a duty, in the context of the activity in which the record is made, to make an honest and truthful report.
There was no testimony as to how the information concerning apartment occupancy was obtained. Further, plaintiffs failed to show the business necessity for the information recorded, other than to say it was required by the county board of health. There was no showing of an opportunity for anyone to tell when an error of misstatement had been made. The records were not admissible under Evid.R. 63(13). Nor were they admissible under either Evid.R. 70(1)(g) or Evid.R. 3. The admission of the "rent rolls" was reversible error.
Defendant urges that its schedule of rates and charges which charge all residential units equally is fair and equitable and that the plaintiffs failed in their burden of proof to overturn the schedule as it pertains to apartments. The trial judge concluded *117 that the difference between dwellings and apartments in sewage flow was significant and that this bore a direct relation to "use or service" and that there thus was discrimination. The judge said that water consumption figures provide adequate support for this determination, adding that it did not matter that the difference may be caused by population, residential capacity, the nature of improvements or other circumstances.
N.J.S.A. 40:14A-8(b) provides in part as follows:
Rents, rates, fees and charges, which may be payable periodically, being in the nature of use or service charges, shall as nearly as the sewerage authority shall deem practicable and equitable be uniform throughout the district for the same type, class and amount of use or service of the sewerage system, and may be based or computed either on the consumption of water or in connection with the real property, making due allowance for commercial use of water, or on the number and kind of water outlets on or in connection with the real property, or on the number and kind of plumbing or sewerage fixtures or facilities on or in connection with the real property, or on the number of persons residing or working on or otherwise connected or identified with the real property, or on the capacity of the improvements on or connected with the real property, or on any other factors determining the type, class and amount of use or service of the sewerage system, or on any combination of any such factors, and may give weight to the characteristics of the sewage and other wastes and any other special matter affecting the cost of treatment and disposal thereof, ....
In Airwick Industries, Inc. v. Carlstadt Sewerage Auth., 57 N.J. 107 (1970) cert. den. 402 U.S. 967, 91 S.Ct. 1666, 29 L.Ed.2d 132 (1971), the court said the purpose of the annual charge is to raise a sum sufficient to pay
... (1) all expenses of operation and maintenance and (2) the principal and interest on any bonds and to maintain reserves or sinking funds for the funding of the Authority debt. The former of these items has its genesis in the actual use of the system for waste disposal. The latter has its genesis in the original construction and installation costs, for which the bonds were issued and sold. The principal and interest on these obligations represent that cost. [at 120]
In Piscataway Ap't Ass'n v. Piscataway Tp., 66 N.J. 106 (1970), the Piscataway Apartment Association, a nonprofit corporation, brought an action to challenge the township's sewer rates as unreasonable or unfairly discriminatory as they applied to apartments, in that apartment houses were charged annual rates on a flat-fee basis per dwelling unit, which was the same rate that owners of smaller multiple-family dwellings and of *118 single-family dwellings paid. There the plaintiff association argued that apartments had substantially less sewage flow than dwellings. The trial court found for the plaintiff and the Appellate Division reversed, 131 N.J. Super. 83 (1974), finding that plaintiff had not sustained the burden of establishing that the sewer rates were unreasonable or unfairly discriminatory in their application to apartments. That court expressed no opinion on the issue whether a sanitary sewer rate or charge fixed according to actual usage, determined by metering the flow of sewage of each user or determined by close approximation from measured water consumption adjusted for customary and known variables, would be more nearly equitable methods or bases. Id. at 86. On appeal the Supreme Court sustained the Appellate Division for essentially the reasons given by that court, but stated:
Preliminarily, it is our view that a municipally owned sewer utility may reasonably fix the same dwelling unit sewerage use charge for all single-family occupancy units, whether in large apartment houses, smaller multiple rental buildings or single-family residences. We see no compulsion for making rates dependent on specific or average sewerage flows in different categories of housing, particularly when, as here, the municipality is not operating through a sewerage authority pursuant to the particularized regulations of N.J.S.A. 40:14A-1 et seq. All that is required is classification of rates on a basis free from patent unreasonableness. See N.J.S.A. 40:63-7, Crowe et al. v. Mayor and Coun. of the Tp. of Sparta, 106 N.J. Super. 204, 206 (App.Div.), certif. den. 55 N.J. 79 (1969). This feature of the instant ordinance is not unreasonable. See Oradell Village et als. v. Tp. of Wayne, 98 N.J. Super. 8, 13 (Ch.Div. 1967), aff'd o.b. 101 N.J. Super. 403 (App.Div. 1968), aff'd o.b. 53 N.J. 496 (1969). [66 N.J. at 109]
Other jurisdictions share this view. In State v. City of Miami Springs, 245 So.2d 80, 81 (Fla.Sup.Ct. 1971), the court upheld a classification which imposed a flat rate for single-family dwellings and a variable rate for duplexes, apartments, multi-family dwellings, motels and hotels based on water usage with a minimum equal to the flat rate for single family dwellings. In McDonald Mobile Homes, Inc. v. Village of Swansea, 56 Ill. App.3d 759, 14 Ill.Dec. 102, 371 N.E.2d 1155, 1159 (App.Ct. 1977), the court said that an ordinance applying the same sewer use charge to all residential units, whether they were single-family dwellings, *119 apartments, motel rooms or mobile homes, was not invalid as unreasonable classifications.
These cases deal with classifications of residential, commercial or industrial. In the present case plaintiffs seek to focus more finely and maintain that there should be a meaningful classification based on bedrooms. Plaintiffs contend they are being discriminated against because defendant charges the same sewer service charge for one- and two-bedroom apartments as it charges for dwelling houses containing three or more bedrooms, adding that it is not arguing that there should be a distinction between an apartment as such and a single-family dwelling as such.
From a practical viewpoint, such position could lead to problems and inequities. The classification of a room as a bedroom by a developer or apartment owner does not mean that that is the way the room will be utilized by the occupants. A family owning a three-bedroom house could, for example, use one bedroom as a study, a sewing room, utility room or guest room. A family residing in an apartment could similarly do so. Thus, a three-bedroom apartment could become a two-bedroom apartment with one room utilized for some other purpose. Thus, classifications based on the number of bedrooms could fluctuate from month to month, depending upon the inclination of the occupants. Although the number of bedrooms may be an indication of residential population, it is not a precise yardstick. For example, a family consisting of the parents and a son and a daughter would require three bedrooms, while a family consisting of the parents and two sons or two daughters could only require a two-bedroom dwelling.
N.J.S.A. 40:14A-8(b) mandates that the sewer rates, "being in the nature of use or service charges," shall as nearly as the sewerage authority deemed practical and equitable be uniform throughout the district for the "same type, class and amount of use or service of the sewage system" and may be based or computed on a number of factors. These factors are (1) the *120 consumption of water, or (2) the number and kind of outlets, or (3) the number and kind of plumbing or sewerage fixtures or facilities, or (4) the number of persons residing therein, or (5) the capacity of the improvement, or (6) on any other factors determining the type, class and amount of use or service of the sewerage system, or (7) on any combination of any such factors. The authority may also give weight to the characteristics of the sewage and other wastes and any other special matter affecting the cost of treatment and disposal thereof.
The factors are in the disjunctive. A plain reading of the statute indicates that the rates need not be based solely on the consumption of water, nor on the number of persons residing in a dwelling which, in essence, is what the trial judge did.
The trial judge rejected defendant's argument that the words "use or service" in the statute have separate meanings and that its rate structure allocates the fixed aspect of the costs to "service" and the variable aspects to "use." The judge said it was clear from the factors listed in the statute that quantity of the use or service was the central concern of the statute. He said that it may be said that services are provided to the consumer who makes use of them, and thus there was no basis for separating the two words.
Because the options in the statute are listed in the disjunctive, the use of either "use" or "service" would not be appropriate. The two words are not synonymous. For example, the statute permits an authority to base its rates on the consumption of water, which would thus make the rates a use charge. On the other hand, an authority could base the rate on the capacity of the improvement on or connected with the real property, and thus the rate could then be seen as a service charge.
Herbert S. Krugman, a consultant specializing in utility rates and cost of service, testified on behalf of defendant that it was his opinion that water consumption was not necessarily the best or most equitable method of determining sewerage service charges and that it was one of the most expensive ones because *121 costs would have to be incurred to measure a very small, variable element. He felt that the most equitable and least difficult rate schedule would be a flat rate. By averaging the residential, schools, commercial and manufacturing usage as a unit, he determined that the fixed costs per unit would be $86.13 and that the variable costs per thousand gallons of sewage would be 12 cents.
The party attacking a classification has the burden to show that it lacks a rational relationship to a legitimate state objective. Such a classification must be sustained if it can be justified on any reasonably conceivable state of facts. It does not matter that the classification may be mathematically imperfect or that it results in some inequities in practice. Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 71 N.J. 249, 283 (1976), app. dism. and cert. den. 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977).
Plaintiffs failed to show that defendant's rate schedule, which includes single-family dwellings and one- and two-bedroom apartments, as well as all multi-family dwellings, in one classification is without a rational basis. The Legislature gave a sewerage authority wide discretion in establishing sewer rates and mandated that the rates, as nearly as the authority deems practicable and equitable, be uniform throughout the district for the same type, class and amount of use or service of the system. N.J.S.A. 40:14A-8(b). While an authority may consider the apparent differences between apartments and single-family dwellings and provide a different rate for them, the authority is not mandated to do this.
In essence, the trial judge differed from Edgewater as to the basis for the rates. This is not the function of a court in reviewing whether the fixing of rates was arbitrary or unreasonable. By their very nature sewer rates cannot be fixed so that they will apply with exactness. Here Edgewater selected a method available to it under N.J.S.A. 40:14A-8(b). Such fixing was reasonable and not arbitrary. We do not reach the appeal *122 from the denial of the third-party complaint nor the cross-appeal.
The judgment of the Law Division is reversed. The matter is remanded to the trial court for the entry of judgment in favor of defendant and dismissing the third-party complaint. Jurisdiction is not retained.
SEIDMAN, P.J.A.D. (dissenting).
I would affirm the judgment substantially for the reasons expressed by Judge Haines in his comprehensive written opinion.