230 N.J. Super. 461 (1989)
553 A.2d 874
WARRENVILLE PLAZA, INC., PLAINTIFF-APPELLANT,
v.
THE WARREN TOWNSHIP SEWERAGE AUTHORITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1989.
Decided February 14, 1989.
*462 Before Judges PETRELLA, GRUCCIO and LANDAU.
Jonathan E. Drill argued the cause for appellant (McDonough, Murray & Korn, attorneys; Joseph E. Murray, of counsel; Murray and Drill, on the brief).
*463 J. Albert Mastro argued the cause for respondent.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff Warrenville Plaza, Inc. (Plaza), a developer of real estate, challenges the current method used by Warren Township Sewerage Authority (the Authority) in assessing nonresidential developments, here Plaza's condominium office buildings, with respect to the imposition of connection charges. In a complaint in lieu of prerogative writ Plaza challenged the lawfulness of certain connection charges imposed by the Authority on each condominium unit. Those charges were known as capacity trunk rate charges and tap-in charges (collectively referred to as connection fees). The Authority moved for partial summary judgment with respect to the connection fees and Plaza cross-moved for summary judgment. At oral argument on the motions the parties relied on discovery, which included depositions and certifications. There was no dispute as to any factual issues. The trial judge upheld the assessment of the connection charges on the condominium units. As an alternative ground for entering judgment for the Authority, the trial judge concluded that Plaza had failed to exhaust administrative remedies because it had not "formally" requested a hearing before the Authority.
On its appeal Plaza argues that the Authority's allocation of an "equivalent" unit of residential discharge for each nonresidential condominium unit without taking into account uniform treatment of all commercial users, discriminates against the condominium form of ownership in violation of the equal protection clause of the Fourteenth Amendment. According to Plaza, the classification imposed by the Authority is discriminatory because it lacks a rational relationship to a legitimate State objective and cannot be justified by the facts. The argument is also made that the Authority's administrative calculation of an "equivalent" unit of residential discharge is contrary to the *464 uniformity and equality requirements of N.J.S.A. 40:14A-8(b). Finally, Plaza argues that it should not be considered barred by the doctrine of exhaustion of administrative remedies.

I
We turn first to Plaza's argument that the doctrine of exhaustion of administrative remedies should not bar this action. Plaza essentially contends that the trial judge erred in concluding that it failed to exhaust administrative remedies because Plaza did in fact seek relief from the Authority to the extent it was available. We agree and hold that Plaza's cause of action is not barred by any failure to exhaust administrative remedies.
Plaza was assessed the connection fees in June 1985, and subsequently paid them. In a March 12, 1986 letter Plaza's attorney informed the Authority that payment was made under protest and a meeting was requested to determine whether a modification of the assessed connection fees was warranted. In addition, Plaza had been advised at several public meetings held by the Authority that its request for a review of the connection fees was under consideration. Despite Plaza's efforts, from March 1986 through March 1987 the Authority did not respond to Plaza's request. On June 2, 1987, Plaza filed its prerogative writ action. Notwithstanding the foregoing, the Authority's attorney represented to the judge during argument on its motion for partial summary judgment that the Authority is always available to hear rate disputes, and had Plaza requested a formal hearing such a hearing would have been granted. Based upon this representation and Plaza's failure to request a formal hearing, the judge concluded that Plaza had not exhausted available administrative remedies.
In our view the judge's conclusion in this regard is contrary to the facts. The Authority does not have in place any formal procedure for aggrieved parties to appeal the assessment of connection fees. No such procedure can be found in the Authority's *465 resolution. Indeed, there was an undisputed assertion by the Authority's representative that the primary administrative procedure for contesting connection fees is established at the time of the public hearing when the rates are initially adopted. It is at that time that a party opposing the rate structure is expected to state his objections. Beyond this it appears that Plaza had no other recourse but to institute an action in the courts when its requests for relief were denied.
The exhaustion of remedies requirement "rests on the premise that such remedies are `certainly available and completely adequate to right the wrong complained of.'" Abbott v. Burke, 195 N.J. Super. 59, 73 (App.Div. 1984), rev'd on other grounds, 100 N.J. 269 (1985). In the instant case no such administrative remedies were "certainly available." Indeed, Plaza had made efforts to obtain an administrative remedy prior to instituting suit. The Authority acknowledged Plaza's request but ultimately never responded. Plaza waited for more than one year for a response and then determined that it was necessary to file this suit. Even if some informal procedure existed, and we are hard pressed to find one, it was inadequate here. It is apparent that further effort by Plaza to pursue an administrative remedy would have been futile. Brunetti v. Borough of New Milford, 68 N.J. 576, 589 (1975). In any event, application of the doctrine of exhaustion of administrative remedies is not applicable where, as here, the only issues that remain to be resolved are legal issues. Matawan Borough v. Monmouth County Tax Board, 51 N.J. 291, 297 (1968).

II
Since we have concluded that Plaza's action is not barred we now turn to the remaining issues raised by Plaza in this appeal.
Plaza obtained site plan approval in June 1985 to construct 22 professional office condominiums to be contained in *466 seven buildings[1] in a campus-like setting on land it owned in Warren Township. The size of the property is approximately five acres. We were informed at oral argument that each of the 22 condominium units would be approximately 1,440 square feet and each has its own lavatory, toilet and all other necessary plumbing facilities. In addition, although not in the record, the parties acknowledge that each condominium unit is separately metered for utilities, which includes water, electric and gas. Sewer assessments were imposed for each of the 22 condominium units despite Plaza's objection. Plaza eventually instituted suit to challenge the Authority's actions.
The Authority, created in 1972 as an autonomous agency under N.J.S.A. 40:14A-1, et seq., is authorized under the enabling statute to collect service and connection charges. By a 1985 resolution the Authority established a revised rate schedule to provide for the recovery of capital costs and funding of the Authority's debt obligation connected with the construction of the sewer system known as the Middlebrook Trunk System. This resolution provided for the assessment of the capacity rate trunk charge and the tap-in charge. For the purpose of assessing these connection fees the 1985 resolution established two classes of users, "residential" users and "all other" users. Residential users were assessed a capacity rate trunk charge of $1,600 and a tap-in charge of $2,500 "for each single family dwelling." For the "all other" classification, which applied to all nonresidential users, including commercial and industrial users, the 1985 resolution provided as follows:
all other  ($2,500 for capacity rate trunk charge) ($3,100 for tap-in charge) per unit of discharge as determined by the Authority on the basis of the factors specified in N.J.S.A. 40:14A-8, the data and information made available to this authority, the results of Authority investigations and on studies of meter readings.
*467 The person who was Authority chairman in 1985 provided deposition testimony concerning the methodology used by the Authority to assess the connection charges against Plaza. Initially, he noted that the 1985 resolution defined one unit of discharge as being equal to 280 gallons per day (gpd) of sewage flow, and that all single family residences were established as being equal to one unit of discharge, known as the residential unit. He also noted that the single family residence was established by the Authority as the basic unit of discharge and is considered the standard unit for measuring units of discharge for all users including users falling within the "all other" classification. The Authority considered one residential unit as the minimum unit upon which to assess connection charges. The chairman testified that regardless of house or lot size or the number of occupants, each single family residence would be charged the minimum of one residential unit for purposes of assessing connection charges.
Based upon this concept of using the residential unit as the standard unit for measuring units of discharge, the Authority would determine the units of discharge for nonresidential users under its resolution's "all other" classification by converting the nonresidential users' sewage flow to equivalent residential units, known as "equivalent units." According to the chairman's testimony the Authority utilized three methods to equate the nonresidential users' discharge to equivalent units. The Authority would first attempt to draw an analogy between the nonresidential structure subject to assessment and a similar residential structure. If no such analogy could be drawn then the Authority would apply either the so-called "gallonage method" or the so-called "State formula." Under the gallonage method the Authority would determine the average daily sewage flow for the nonresidential user and divide that figure by 280 gpd (the amount utilized for one residential unit) to arrive at the number of equivalent units. Under the State formula approach the Authority would apply a factor of 0.125 established by the New Jersey Department of Environmental Protection *468 to convert the square footage of the nonresidential structure to an estimate of gallons of sewage flow. The equivalent units were then computed by dividing the result of applying the State formula by 280 gpd. The Authority chairman testified that when determining equivalent units the key objective is to equate the nonresidential user to the residential user.
In Plaza's case the Authority applied the first method because it was able to draw an analogy between Plaza's commercial office condominium structures and residential condominium structures, which are charged the minimum of one equivalent unit per condominium unit. Based on this analogy approach the Authority charged Plaza the minimum of one equivalent unit of discharge for each of its 22 condominium units, or 22 equivalent units, when computing its connection fees. Consequently, Plaza was required to pay a total of $123,234.79[2] for the capacity rate trunk charge and the tap-in charge. Plaza asserts that had the State formula been applied it would have only been required to pay a total of $81,988.62.[3] The record *469 below does not reveal what the amount of the connection fees would have been had the gallonage method been applied.
Plaza essentially argues that the Authority, by applying this analogy approach to determine equivalent units to users falling within the "all other" classification, has created a disparity of treatment between commercial condominium units and non-condominium commercial structures and that such a disparity in treatment lacks a rational relationship to the Authority's legitimate objectives of providing uniform fees and funding of the cost of the sewer system. Plaza contends that where this approach produces more units of discharge than would either the "gallonage method" or the State formula then it results in connection charges that are discriminatory as applied to the commercial condominium owner.
As the New Jersey Supreme Court noted in Airwick Industries, Inc. v. Carlstadt Sewerage Auth., 57 N.J. 107, 117 (1970), quoting Walters v. St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660, 665 (1959):
Equal protection does not require identity of treatment. It only requires that the classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification as to be wholly arbitrary.
The standard applied to attack the Authority's classification in this case has been established in Phoenix Associates v. Edgewater Park Sewer Auth., 178 N.J. Super. 109, 121 (App. Div. 1981), aff'd o.b. 89 N.J. 2 (1982), where we stated:
The party attacking a classification has the burden to show that it lacks a rational relationship to a legitimate state objective. Such a classification must *470 be sustained if it can be justified on any reasonably conceivable state of facts. It does not matter that the classification may be mathematically imperfect or that it results in some inequities in practice.
Under N.J.S.A. 40:14A-8 every sewerage authority is authorized to impose upon users a service fee and a connection or tapping fee. Service fees are "in the nature of use or service charges" and "shall as nearly as the sewerage authority shall deem practicable and equitable be uniform throughout the district for the same type, class and amount of use or service of the sewerage system." N.J.S.A. 40:14A-8(b). With respect to connection fees the statute provides in pertinent part:
In addition to any such periodic service charges, a separate charge in the nature of a connection fee or tapping fee, in respect of each connection of any property with the sewerage system, may be imposed upon the owner or occupant of the property so connected. Such connection charges shall be uniform within each class of users and the amount thereof shall not exceed the actual cost of the physical connection, if made by the authority, plus an amount computed in the following manner to represent a fair payment toward the cost of the system.
* * * * * * * *
The combination of such connection fee or tapping fee and the aforesaid periodic service charges shall meet the requirements of subsection (c) hereof. [Id.]
Subsection (c) of N.J.S.A. 40:14A-8 provides that the fees imposed by a sewerage authority shall be adequate to meet all the expenses of the authority, including its debt service. After the 1985 sewer charges were assessed against Plaza's property, this statute was amended in 1986 by L. 1985, c. 526 § 1 (approved and effective January 21, 1986), to limit the amount of connection fees to "the actual cost of the physical connection, if made by the authority," plus "a fair payment toward the cost of the system." The amended statute sets forth in considerable detail the precise manner in which the "fair payment" is to be computed. The computation essentially allocates the total debt service and capital cost of the sewer system based upon the number of existing service units served by the Authority. New connections are then charged a connection fee according to the *471 number of service units attributed to that connection. The statute requires that the number of service units be computed by dividing "the estimated average daily flow of sewage for the connector ... by the average daily flow of sewage of the average single family residence in the authority's district ..." Effectively, the Legislature has recognized the "single family residence" as a reasonable and appropriate unit of service. It is significant to note that the Authority's computations of equivalent units was and is based upon the use of the single family residence as the basic minimum unit of discharge.
The issue here is whether the Authority's method applied for determining "equivalent units" of discharge used to compute connection fees for nonresidential users produces uniform connection fees or charges when applied to nonresidential condominium users. Plaza argues that although the Authority uses the single family residence as the basic unit upon which to compute the number of units of discharge, it applies a different methodology when computing the equivalent units for a commercial office condominium as opposed to the methodology applied to commercial non-condominium structures. It asserts that for commercial non-condominium structures the Authority considers an estimate of actual sewage flow as the primary factor for computing equivalent units (i.e., the "gallonage method"). Plaza emphasizes that in its case, however, the Authority merely counted the number of individual condominium units to arrive at the total equivalent units for the condominium development.
These arguments completely ignore the manner in which the Authority applies its method for computing equivalent units. The Authority says it does not automatically count each single condominium unit to determine equivalent units. Rather, in accordance with its resolution the Authority applies a case-by-case evaluation of each nonresidential user seeking a connection whether or not that user's structure is in the condominium *472 form of ownership. The Authority first determines whether a residential analogy can be drawn. See N.J.S.A. 40:14A-8(b)(3). It considers whether the subject structure is analogous to a single family residence, a residential apartment or a residential condominium. If no such residential analogy can be drawn then the previously described "gallonage method" or the State formula is applied. In Plaza's case, because the Authority found that plaintiff's commercial office condominiums were clearly analogous to residential condominiums there was no need for it to apply one of the other methods for determining equivalent units. This approach applies to all nonresidential users, whatever the form of ownership.
In any event, even if the State formula was to be applied the result would be the same. Because of the size of each of Plaza's condominium units it would still have been charged based upon the minimum of one unit of discharge per each condominium under that formula.[4] As previously noted it is the Authority's policy to assess connection fees based upon nothing less than the minimum of one equivalent unit. Under the facts of the instant case, to permit Plaza to use the State formula would place all other users who would be assessed, in accordance with the Authority's policy, based upon the minimum of one equivalent unit, in a position of subsidizing Plaza's obligation to pay its fair share considering the manner it chose to develop its property. This is so notwithstanding that the State formula would yield equivalent units of less than one for such users. Plaza would be paying as if there are only two condominium units for each of the seven buildings, when in fact there *473 are three condominium units in all but one of the seven buildings (one building has seven condominium units). Plaza has not established that the methodology applied by the Authority to determine units of discharge for nonresidential users is patently unreasonable. Meglino v. Township Committee of Eagleswood, 103 N.J. 144, 152 (1986).
Plaza also contends that there is no reasonably conceivable state of facts to support the asserted disparity of treatment resulting from the Authority's method of determining equivalent units as applied to commercial condominium owners. It is undisputed that a residential condominium, like a single family residence, is assessed connection fees based upon the minimum one unit of discharge because it falls within the "single family dwelling" classification. The Authority also assessed Plaza's commercial condominiums based upon the minimum one unit of discharge because they were found to be analogous to the residential condominium. The Authority provided a rationale for the difference in treatment between a large wholly owned commercial office building and the individually owned office condominium complex. A condominium unit is generally separately owned, and as such the overall internal physical structure of a building containing condominiums would not be expected to significantly change. The internal physical structure of the individually owned commercial office building can, however, drastically change by virtue of the lack of restriction on change where single ownership exists. The facts in the instant case provide additional support for this difference in treatment since each condominium unit in Plaza's condominium complex is self-contained, has its own lavatory and plumbing facilities and is separately metered for utilities, thus making the residential analogy that much clearer. It is only because of the difficulty in finding a residential counterpart for the large commercial office building, that the Authority would apply either the "gallonage method" or the State formula to determine the equivalent *474 units for such a structure. Hence, we conclude that the Authority's method of assessing connection fees, even though it may produce some disparity when applied to commercial condominiums, was justified in Plaza's case. Phoenix Associates v. Edgewater Park Sewer Auth., supra (178 N.J. Super. at 121). Any disparity that resulted "rests on real and not feigned differences." Airwick Industries, Inc. v. Carlstadt Sewerage Auth., supra (57 N.J. at 117). There is no constitutional infirmity in the application of the Authority's fees to Plaza's property.
We find Plaza's reliance on Luv Condominium Association v. Stanhope, 192 N.J. Super. 159 (App.Div. 1983) to support its contention that there is no rational basis for the Authority's disparate treatment of commercial office condominiums, is misplaced. In Luv Condominium Association, we held that when assessing periodic user charges a residential condominium may be treated the same as a single family residence or an apartment. 192 N.J. Super. at 167. This holding, however, supports the Authority's position. If a condominium structure may be treated the same as a residential structure for assessing user fees we find no valid legal reason why they may not be treated the same for purposes of assessing connection fees. Ibid.
Plaza next argues that the Authority's calculation of equivalent units of discharge as applied to commercial condominium units is "contrary to the requirements of uniformity and equality set forth in N.J.S.A. 40:14A-8(b)." Plaza provides several examples in its brief where the application of the Authority's method for determining equivalent units creates some disparity between similar classes of users. The Authority also illustrates by way of example that precisely equal treatment is not possible. What Plaza's arguments fail to recognize is that because the approach used by the Authority is based upon a single family residence unit, notwithstanding the size of the single family residence, the form of its ownership or the number of its *475 occupants, as the basic unit for measuring equivalent units of discharge, some disparity will necessarily result. As observed by the New Jersey Supreme Court in Airwick Industries, Inc. v. Carlstadt Sewerage Auth., supra (57 N.J. at 122):

N.J.S.A. 40:14A-8(b) need not be read to require precise mathematical equality, but rather to contemplate rough equality, keeping in mind that we are in an area in which, as with respect to other tax impositions, absolute equality is neither feasible nor constitutionally vital.
It is only required that the "different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary." Id. at 117 The fees charged here are not discriminatory.
In summary, the Authority has established an approach for assessing connection fees using the single family residence as a basis for determining the number of units of discharge for all users. Such an approach, based upon the determined average sewage flow from a single family residence, comports with the statutory mandate for calculating the fair payment portion of the connection fee. See N.J.S.A. 40:14A-8(b)(3). Furthermore, this approach is applied by the Authority to all residential and nonresidential users equally, notwithstanding the form of ownership in which the property is held or the number of occupants or users. To hold as Plaza would have us do would require precise mathematical accuracy where it is "neither feasible nor constitutionally vital." Airwick Industries, Inc., supra (57 N.J. at 122).
We conclude, therefore, that the Authority's methodology for determining connection fees for nonresidential users, including commercial office condominium owners, does not violate any constitutional prohibition, is not wholly arbitrary, and is reasonably related to the Authority's objectives of providing uniform fees and assuring a fair payment toward the cost of the sewer system. Id. at 122.
Accordingly, the judgment appealed from is affirmed.
NOTES
[1] Six of the buildings contain three condominium units and one building is comprised of four condominium units. All are apparently located on a single lot.
[2] Plaintiff's total payment was arrived at by multiplying the 22 equivalent units by the rates established for the applicable connection fee plus a prorated amount of interest as prescribed by resolution.
[3] According to Plaza, application of the State formula would have yielded 14 equivalent units rather than the 22 units determined by the Authority. Plaza asserts that had the State formula been applied the total payment would have been arrived at by first multiplying the square footage, established by Plaza for each of its condominium units, of 1,440 square feet, by the number of condominium units, here 22, to compute the total square footage for the entire lot. The total square footage would then have been multiplied by 0.125 to convert it into an estimate of sewage flow. The result of this calculation would then have been divided by the established sewage flow for a single family dwelling, of 280 gpd, to produce the total equivalent units of 14 for Plaza's seven buildings. This calculation can be shown as follows:
 Step 1:
 1,440 sq. ft. X 22 condominium units = 31,680 sq. ft.
 Step 2:
 31,680 sq. ft. X 0.125 = 3,960 gpd (estimated sewage flow)
 Step 3:
 3,960 gpd divided by 280 gpd = 14 equivalent units.

The 14 equivalent units, according to plaintiff, would then have been multiplied by the rates established for the applicable connection fee plus a prorated interest amount to arrive at the total payment. It should be noted here that Plaza overlooks the fact that the application of the State formula in its case would result in each condominium unit being assessed at less than the required minimum of one equivalent unit, which would not have conformed to the Authority's policy. See footnote 4 infra, and accompanying text of opinion.
[4] In plaintiff's case the application of the State formula would have resulted in an equivalent unit for each condominium of less than one as follows: 1,440 sq. ft. X .125 divided by 280 gpd =.64 equivalent units. Obviously, nonresidential units might be larger than 1,440 square feet. Size alone is not the sole factor taken into account. The condominium units are all self-contained. Indeed, even the gallonage usage of a unit is not dependent upon size. Certain uses might be much more water intensive than others regardless of size.