**Lawrence H. GILLESPIE, Plaintiff Below, Appellant,**

**v.**

**SUSSEX COUNTY, a Political Subdivision of the State of Delaware, by its Duly Elected and Appointed Officials in their Official Capacity, Sussex County Council and Sussex County Engineer, Defendants Below, Appellees.**

**No. 169, 1999.**

Supreme Court of Delaware.

Submitted: Jan. 25, 2000.
Decided: Feb. 14, 2000.

**82.** *See id.* at § 1871.

John A. Sergovic, Jr. (argued) and Julie G. Bucklin, Sergovic, Ellis & Shirey, P.A., Georgetown, Delaware, for appellant.

Dennis L. Schrader, Wilson, Halbrook & Bayard, P.A., Georgetown, Delaware, for Appellee Sussex County.

Before VEASEY, Chief Justice, WALSH, HOLLAND and BERGER, Justices, and JACOBS, Vice Chancellor.*

PER CURIAM:

In this appeal, a property owner in Sussex County contends that the Superior Court erred in rejecting his claim that annual sewer assessment fees charged to property owners in the West Rehoboth Expansion of the Dewey Beach Sewer District are excessive and not rationally based. Although we do not adopt the rationale of the Superior Court's ruling, we agree that the charges in question are

---

* Appointed pursuant to Art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4.

rationally related to a legitimate governmental purpose. Accordingly, we affirm.

## I

In June of 1996, the appellant, Lawrence H. Gillespie ("Gillespie"), brought an action for declaratory judgment and review by certiorari against Sussex County challenging the manner by which the County charges property owners in the West Rehoboth Expansion an annual sewer assessment fee. Under the Sussex County Code, the annual assessment is calculated by multiplying the property owners' front footage by an assessment rate established by the County. *See Sussex County Code,* art. XIII, § 110–92. The assessment rate is based on the monetary amount required to finance the retiring of bonds issued to finance the design and construction of a sewer system and consists of two subrates: (i) a distribution and collection rate and (ii) a transmission and treatment rate. *See id.* at §§ 110–88, 110–92. The collection and distribution rate refers to the costs associated with linking the main sewer and water lines to the individual properties. *See id.* at § 110–86(a). In contrast, the transmission and treatment rate refers to the costs associated with the infrastructure as a whole. *See id.*

The Superior Court, after considering cross-motions for summary judgment by both parties, held that the decision to use the front footage method to calculate annual assessments is not beyond the power of the County and that the charges challenged in this case are rationally related to a legitimate governmental purpose, because "the amount and cost of piping required increases in proportion to the amount of front footage." This appeal followed.

## II

This Court's review of the grant of summary judgment by the Superior Court is *de novo* and plenary. *See Dale v. Town of Elsmere,* Del.Supr., 702 A.2d 1219, 1221 (1997). In challenging the annual assessment imposed by the County, Gillespie attacks only the legality of the transmission and treatment component. He contends that the costs of transmitting and pumping wastewater from the treatment and transmission facilities to the treatment plant and treating and discharging the wastewater is a volume component of the sewer service cost. Accordingly, Gillespie argues that the present formula which spreads the cost to users based on property front footage is inequitable and unconstitutional because it has no rational relationship to the volume of use.

The Superior Court concluded that the ordinance was rationally related to a legitimate government interest, *i.e.* that "the amount and cost of piping required increases in proportion to the amount of front footage." The court's rationale, however, is questionable. Because the transmission and treatment rate applies to costs associated with the infrastructure as a whole and does not attempt to reimburse the County for linking the main sewer and water lines to the individual properties, the amount and cost of piping for transmission and treatment does *not* increase in proportion to the amount of front footage.

Nevertheless, we agree with the Superior Court that the charges challenged in this case are rationally related to a legitimate government interest. Under the Home Rule Doctrine, the County has broad statutory authority to determine the basis and rates for the annual assessment. *See 9 Del.C.* § 7001; *Green v. Sussex County,* Del.Super., 668 A.2d 770, 774 (1995). While front footage lacks a direct correlation to treatment and transmission costs, *i.e.* the size of the transmission and treatment facilities, property size is a relevant indicator of what the volume of use may eventually be. Moreover, the County's sewerage system is presently operating at only 40% of capacity. By calculating the transmission and treatment portion of the annual assessment on volume of use, less than half of the property owners

would be forced to bear the burden of the full debt incurred by the County. Basing the transmission and treatment portion of the annual assessment on front footage creates a more equitable distribution between present and future users.

■ Gillespie presents a logical and reasoned approach to calculating the transmission and treatment portion of the annual assessment based on estimated volume of use. As the Superior Court noted in its opinion, however, mathematical exactness is not required. *See Phoenix Assoc. v. Edgewater Park Sewerage Auth.*, 178 N.J.Super. 109, 428 A.2d 508, 514 (1981); *Hickory Township v. Brockway*, 201 Pa.Super. 260, 192 A.2d 231, 234 (1963). Therefore, Gillespie's claim that his method of calculation is more exact does not overcome the presumed constitutionality of the ordinance.

■ Gillespie also contends that the County's calculation of the annual assessment is in violation of *9 Del.C.* § 6709(b). This argument is unpersuasive for two reasons. First, the statute does not apply to the calculation of the annual assessment but, rather, applies to the calculation of the service charge, a separate and distinct charge imposed by the County. Second, even if language of section 6709(b) was viewed as persuasive authority for how the General Assembly intended the county to calculate the annual assessment, the language provides greater support for the position of the County, expressly stating that the service charge may be calculated "on a front footage basis."

### III

For the foregoing reasons, we affirm the Superior Court decision granting summary judgment in favor of the County.