928 A.2d 929 (2007)
395 N.J. Super. 349
OCEAN SENIORS, L.L.C., A Limited Liability Corporation of the State of New Jersey, Plaintiff-Appellant,
v.
TOWNSHIP OF OCEAN SEWERAGE AUTHORITY, A Municipal Sewerage Authority of the State of New Jersey, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted June 5, 2007.
Decided July 31, 2007.
*930 Shiriak & Timins, attorneys for appellant (Ben D. Shiriak, of counsel and on the brief).
Edward A. Kondracki, Medford, attorney for respondent.
Before Judges KESTIN, WEISSBARD and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
Plaintiff, Ocean Seniors, L.L.C., a developer of an age-restricted condominium apartment development, appeals from an order of summary judgment against it in its action against defendant, Township of Ocean Sewerage Authority, that challenged the method utilized to calculate the sewerage connection fees applicable to the development.
On appeal, Ocean Seniors makes the following arguments:
POINT I
The Cost of a Connection Fee Must Match the Benefit Conferred.
POINT II
TOSA Should Not Be Permitted to Charge the Same Connection Fee For One- And Two-Bedroom Age-Restricted Apartments As It Does For Single-Family Residences.
POINT III
The Governing Statute Requires TOSA To Include the Service Units Of the Customer Communities in Total Service Units.
POINT IV
TOSA Should be Required to Include the Service Units of the Customer Communities in Total Service Units.
POINT V
The Appellate Division Is Not Bound By the Trial Court's View of the Law.
POINT VI
There Were Disputed Issue[s] of Material Fact; Summary Judgment Should Not Have Been Granted.
POINT VII

N.J.S.A. 40:14A-8(b)(3) Does Not Bar Post-Connection Fee Payment Review.
We affirm.

I.
This matter was commenced as a challenge to the Sewerage Authority's calculation of sewer connection fees for 2002 and its apportionment of connection fees to Ocean Seniors' 124-unit apartment development. Although that complaint was dismissed, a later-filed complaint, along with its amendments, challenged the connection fees that are presently at issue. In accordance with the direction of the trial court, the parties filed cross-motions for summary judgment that raised, in relevant part, the following issues:
1. Did the authority violate the statute by placing each unit in the plaintiff's residential development in the same classification as a single-family residence?
2. Must the residential customers of the Customer Communities be included in the service units of the *931 Authority in determining connection fees?
The motions were heard on the basis of stipulated facts. In a written opinion, dated January 25, 2005, Judge Lehrer rejected Ocean Seniors' arguments on the first issue and, believing the second issue had been waived, granted summary judgment in the Sewerage Authority's favor. When Ocean Seniors made it clear that it had not waived its second argument, the issue was rebriefed and argued. Following oral argument, the court issued a second written opinion, dated August 4, 2006, granting summary judgment to the Authority. Although Ocean Seniors has subdivided its arguments on appeal, essentially, it raises the same two issues argued previously.

II.
The stipulation of facts forming the basis for the court's decisions discloses that the Sewerage Authority was created by the governing body of Ocean Township under the Sewerage Authorities Law, N.J.S.A. 40:14A-1 to -45. It provides sanitary sewer collection, treatment and disposal services to individual residential and commercial customers within its service area in Ocean Township. Additionally, as permitted by N.J.S.A. 40:14A-23, the Sewerage Authority provides bulk treatment services to the adjoining communities of Deal, Interlaken, Allenhurst, and Loch Arbour (the Customer Communities) pursuant to contracts with those communities. The Sewerage Authority does not have individual customers within the Customer Communities but, rather, charges the communities a bulk fee[1] based on the volume of sewage delivered to the Sewerage Authority through its point of interconnection.
In 2001, Ocean Seniors received preliminary and final site-plan approval for the construction of 124 apartments, restricted to residents who were age 55 or over, located exclusively within Ocean Township. Of the development, 111 units include two bedrooms and two baths; twelve units include one bedroom with a den and one and one-half baths; and one unit includes one bedroom and one bath. All units contain a dishwasher, clothes washer and garbage disposal, along with the bathroom facilities. Ocean Seniors intends to limit occupancy of the two-bedroom units to four persons and the remaining units to two persons.
Sewage flow from the project was estimated by Ocean Seniors to be 27,000 gallons a day, and it has received treatment works approval from the New Jersey Department of Environmental Protection (NJDEP) to construct a sanitary sewer extension to accommodate this flow. It is estimated that sewage flow from the two-bedroom units would be 225 gallons per day and flow from the one-bedroom units would be 150 gallons per day.
In accordance with statutory requirements, see N.J.S.A. 40:14A-8(b)(3), the Sewerage Authority annually reviews its sewer connection fee. At a hearing conducted on May 4, 2004, the Sewerage Authority called as its witness David A. Kaplan, a certified public and registered municipal accountant who had served as the Sewerage Authority's auditor for approximately twenty years. He performed a study to determine the average daily water usage for a single-family residence in the district during the period from December 1, 2002 through November 30, 2003. Utilizing water use figures, as statutorily permitted, N.J.S.A. 40:14A-8(b),[2] *932 sewage figures being unavailable, for a representative sample of 194 single-family homes, Kaplan determined that water use was 237 gallons per day per residence. He then divided that per-residence figure into the total average water usage for Ocean Township of 3,550,768 determining, in this fashion, that there were 14,973 service units in the Sewerage Authority's district. Id. Kaplan then calculated the Authority's capital base by adding all debt service payments, whether principal or interest, made by the Sewerage Authority to defray the capital cost of developing the sewer system through the end of the prior fiscal year, together with all reserve funds and capital expenditures paid in cash. After excluding required items, he calculated the capital base at the end of the prior fiscal year to be $51,842,075. He then divided the capital base by the number of service units, thereby deriving a connection fee of $3,462 per equivalent dwelling unit. See N.J.S.A. 40:14A-8(b)(1) to (3). Kaplan did not consider the Customer Communities or their usage in calculating the connection fee.
The Sewerage Authority has established a class of users for connection fee purposes, designated as "Residential, Class I," and consisting of single-family, condominium, townhouse, apartment, multi-family, age-restricted, trailer and mobile home units. Each unit within the class is charged the same connection fee of $3,462.
Although the NJDEP has internal memoranda that reflect reduced flows for design purposes applicable to age-restricted housing, Ocean Seniors did not request that the reduced flows be utilized when it submitted its application to the NJDEP for treatment works approval. Since receiving that approval, Ocean Seniors has constructed, at its own cost, the sewerage facilities necessary to extend sanitary sewer service from the nearest feasible point of connection with the Sewerage Authority's system. Its construction accommodates the sewage volume set forth in its application to the NJDEP. The improvements have been or will be dedicated to the Sewerage Authority, at no cost, upon completion, and will not be included in the capital base of the Sewerage Authority for purposes of calculating future connection fees.

III.
N.J.S.A. 40:14A-8(b), which governs both service charges and connection fees, provides:
Rents, rates, fees and charges, which may be payable periodically, being in the nature of use or service charges, shall as nearly as the sewerage authority shall deem practicable and equitable be uniform throughout the district for the same type, class and amount of use or service of the sewerage system. . . . In addition to any such periodic service charges, a separate charge in the nature of a connection fee or tapping fee, in respect of each connection of any property with the sewerage system, may be imposed upon the owner or occupant of the property so connected. Such connection charges shall be uniform within each class of users . . . and the amount thereof shall not exceed the actual cost of the physical connection, if made by the authority, plus an amount . . . to represent a fair payment toward the cost of the system.
In arguments presented to the trial court and to us, Ocean Seniors challenges, on equal protection grounds, the Sewerage Authority's determination to impose the same connection fee both upon single-family *933 residences and upon age-restricted apartments, claiming that sewage derived from the latter category is less.
We do not accept Ocean Seniors' constitutional argument, regarding it to have been addressed in previous opinions, premised upon analogous facts, and rejected. A number of those decisions concern service charges, but express principles applicable here. In 1974, the Supreme Court decided Piscataway Apt. Assoc. v. Tp. of Piscataway, 66 N.J. 106, 328 A.2d 608, holding that a municipally-owned sewer utility may impose the same sewer service charge "for all single-family occupancy units, whether in large apartment houses, smaller multiple rental buildings or single-family residences." Id. at 109, 328 A.2d 608. Perceiving "no compulsion for making rates dependent on specific or average sewerage flows in different categories of housing," it stated: "All that is required is classification of rates on a basis free from patent unreasonableness." Ibid.
We rely, as well, on our decision in Phoenix Assocs., Inc. v. Edgewater Park Sewerage Auth., 178 N.J.Super. 109, 121, 428 A.2d 508 (App.Div.1981), aff'd o.b., 89 N.J. 2, 444 A.2d 51 (1982), where we recognized that "[b]y their very nature sewer rates cannot be fixed so that they will apply with exactness," and we held:
Plaintiffs failed to show that defendant's rate schedule, which includes single-family dwellings and one- and two-bedroom apartments, as well as all multi-family dwellings, in one classification is without a rational basis. The Legislature gave a sewerage authority wide discretion in establishing sewer rates and mandated that the rates, as nearly as the authority deems practicable and equitable, be uniform throughout the district for the same type, class and amount of use or service of the system. N.J.S.A. 40:14A-8(b). While an authority may consider the apparent differences between apartments and single-family dwellings and provide a different rate for them, the authority is not mandated to do this.
We also note that we adopted the same principles in our decisions in Reahl v. Randolph Twp. Mun. Utils. Auth., 163 N.J.Super. 501, 515-17, 395 A.2d 241 (App.Div.1978)(construing similar Municipal and County Utilities Authorities Law), certif. denied, 81 N.J. 45, 404 A.2d 1146 (1979), and in Luv Condominium Ass'n v. Borough of Stanhope, 192 N.J.Super. 159, 164-67, 469 A.2d 502 (App.Div.1983).
In Warrenville Plaza, Inc. v. Warren Twp. Sewerage Auth., 230 N.J.Super. 461, 553 A.2d 874 (App.Div.1989), we addressed a challenge to sewer connection charges applicable to certain commercial condominium units on the basis that the allocation of an "equivalent" unit of residential discharge for each nonresidential condominium unit without taking into account uniform treatment of all commercial users, discriminated against the condominium form of ownership. There, as in our service fee decisions, we rejected the developer's equal protection arguments, stating:
What Plaza's arguments fail to recognize is that because the approach used by the Authority is based upon a single family residence unit, notwithstanding the size of the single family residence, the form of its ownership or the number of its occupants, as the basic unit for measuring equivalent units of discharge, some disparity will necessarily result. As observed by the New Jersey Supreme Court in Airwick Industries, Inc. v. Carlstadt Sewerage Auth., 57 N.J. [107,] 122, 270 A.2d 18 [(1970)]:

N.J.S.A. 40:14A-8(b) need not be read to require precise mathematical equality, but rather to contemplate rough equality, keeping in mind that we are *934 in an area in which, as with respect to other tax impositions, absolute equality is neither feasible nor constitutionally vital.
It is only required that the "different treatments be not so disparate, relative to the differences in classification, as to be wholly arbitrary." Id. at 117, 270 A.2d 18.
[Warrenville, supra, 230 N.J.Super. at 475, 553 A.2d 874.]
We see no need, in this case, to diverge from the well-established precedent that we have set forth. The record establishes that the condominium apartments being constructed by Ocean Seniors contain all the water-using fixtures and appliances normally found in a free-standing residence. Moreover, we note that Ocean Seniors' calculation of estimated sewage flows from each of the two-bedroom units, comprising ninety percent of the units in the complex, would be 225 gallons per day  a figure that is very close to the 237 gallons per day estimated as the water usage of a single-family residence. Placing the apartment units in the same classification as such residences cannot, under these circumstances, be considered wholly arbitrary.

IV.
Ocean Seniors additionally challenges the fashion in which "service units" were calculated, claiming that the calculation should have taken into account the Customer Communities. We again reject the arguments of Ocean Seniors and affirm the decision of the trial court, substantially on the basis of the thoughtful and comprehensive opinion of Judge Lehrer, ___ N.J.Super. ___, ___ A.2d ___ (Law Div.2007).
We add only that it appears clear to us that the Legislature considered circumstances like these when enacting the Sewerage Authorities Law. N.J.S.A. 40:14A-8(b)(2) requires that amounts paid to the Sewerage Authority by the Customer Communities pursuant to their service contracts must be deducted from capital expenditures and debt service before those yearly costs are apportioned among service units in Ocean Township. The ordering of the statute and the exclusion of service charges paid by contracting Customer Communities indicates that the connectors in those communities should not be considered as service units when calculating connection fees.
To do so would bestow a windfall on Ocean Seniors, because the contributions of the Customer Communities had already been proportionately deducted from Ocean Seniors' obligation when the connection fee was calculated. Deducting the contributions of the Customer Communities reduces Ocean Seniors' share of the Sewerage Authority's costs at the start. To then include the service units of these communities in the final division of the capital base would further reduce Ocean Seniors' share at the back-end of the calculation. This is clearly inequitable.
If Ocean Seniors wishes connectors in the Customer Communities to be included as service units and apportioned as a share of the capital base, then the Customer Communities' contributions to the system must remain part of that capital base until the final apportionment occurs. This is, however, contrary to statute, and thus cannot be accomplished as Ocean Seniors proposes. This logic provides additional grounds for rejecting Ocean Seniors' position on this issue.
We regard none of the remaining arguments of Ocean Seniors as possessing sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Payments are derived in accordance with methods set forth in N.J.S.A. 40:14A-23.
[2] Although Ocean Seniors challenges the use of such figures, we reject that challenge, noting not only the statutory authorization, but also our rejection of a similar challenge in Phoenix Assocs., Inc. v. Edgewater Park Sewerage Auth., 178 N.J.Super. 109, 120-21, 428 A.2d 508 (App.Div.1981), aff'd o.b., 89 N.J. 2, 444 A.2d 51 (1982).