J-S83022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                           :  PENNSYLVANIA
                                           :

          v.                         :
                                           :

DASHAWN L. SMITH             :
                                         :

          Appellant     :  No. 116 EDA 2017

Appeal from the Judgment of Sentence December 14, 2016
In the Court of Common Pleas of Montgomery County Criminal Division at
No(s):  CP-46-CR-0000745-2016,
CP-46-CR-0000753-2016, CP-46-CR-0005110-2013

BEFORE:  GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY OLSON, J.:            **FILED APRIL 09, 2018**

Appellant, Dashawn L. Smith, appeals from the judgment of sentence,

in three separate criminal matters,[1] entered on December 14, 2016.  Upon

review, we affirm.

_____

[1]  As noted by the trial court:

First, [Appellant] appeals from his judgment of sentence[]
entered on December 14, 2016, at docket CP-46-CR-005110-
2013 ("5110-2013"), imposed following a stipulated non-jury
trial on July 8, 2016, where he was convicted of persons not to
possess firearms and possession with intent to deliver [a
controlled substance ("PWID")].  [18 Pa.C.S.A. § 6105 and 35
P.S. § 780-113(a)(30), respectively.]  [Appellant] has also
appealed from his judgment of sentence entered on December
14, 2016, at docket CP-46-CR-0000753-2016 ("753-2016"),
imposed following a stipulated non-jury trial on September 26,
2016, at which he was found guilty [PWID], criminal conspiracy,
resisting arrest[,] and recklessly endangering another person
[("REAP")]. [35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 903, 18

*(Footnote Continued Next Page)*

We briefly set forth the facts and procedural history of these cases as follows. At docket 5110-2013, while on parole for an unrelated PWID conviction, Appellant violated several provisions of his parole in June of 2013, including missing curfew, testing positive twice for controlled substances, and giving his parole officer conflicting excuses for the alleged misconduct. Additionally, when going through the metal detector at the parole office, Appellant's parole officer saw Appellant with a cellular telephone and a stack of currency, despite the fact that Appellant had been unemployed for the prior seven months. Appellant's parole officer and the officer's supervisor searched Appellant's cellular telephone and found incriminating evidence, including text messages indicating Appellant was selling drugs and other text messages discussing Appellant's positive drug tests. Appellant was detained. In a search incident to that detention, the parole agents recovered $460.00 from Appellant's person, which Appellant attributed to selling DVDs or t-shirts. A subsequent search of Appellant's apartment, on June 19, 2013, uncovered 932 individual baggies of heroin, a

---
*(Footnote Continued)* ————————————

Pa.C.S.A. § 5104, and 18 Pa.C.S.A. § 2705, respectively.] Finally, [Appellant] has appealed from his judgment of sentence entered on December 14, 2016, at docket CP-46-CR-0000745-2016 ("745-2016"), imposed following his entry of a guilty plea on the same date to criminal trespass[, 18 Pa.C.S.A. § 3503].

Trial Court Opinion, 3/29/2017, at 2-3 (footnotes incorporated). However, this appeal only addresses issues related to the first two cases, 5110-2013 and 753-2016, as set forth above.

digital scale, unused baggies, and an unloaded .45 caliber handgun under the mattress in the bedroom belonging to Appellant. Prior to trial, on June 15, 2016, the trial court held a suppression hearing and denied Appellant relief. On July 8, 2016, following a stipulated non-jury trial, Appellant was convicted of persons not to possess a firearm and PWID. On December 14, 2016, the trial court sentenced Appellant to six years and three months to 14 years of imprisonment.

At docket 753-2016, police saw Appellant enter an apartment building located at 3 West Fourth Street in Montgomery County, Pennsylvania on December 17, 2015. They saw Appellant and a woman later identified as Appellant's girlfriend, Melissa Griffin, enter the building together. At the time, there was an active, outstanding warrant for Appellant's arrest and one of the investigating officers knew Appellant carried a firearm in the past and believed he may be armed. Appellant eventually left the building alone, saw the police when they approached him, and fled. While fleeing, Appellant discarded a cellular telephone and 14 individual bags of heroin. Police arrested Appellant and applied for a search warrant for the apartment at 3 West Fourth Street. Before obtaining a search warrant, the officers decided to secure the apartment because Griffin was still inside and could destroy evidence. Police announced their presence, opened the unlocked front door, and Griffin came out of one of the bedrooms with her hands up. Police then conducted a protective sweep of the apartment, only looking in places where a person could hide. In doing so, police observed three cellular telephones

and a stack of money in one room. In another bedroom, they saw items of drug paraphernalia. All of these items were in plain view and police did not confiscate them. Instead, they awaited the search warrant for the apartment. While in police custody, Appellant asked why the police were searching the residence at 3 West Fourth Street when he lived at 416 Vine Street. Thereafter, the police applied for a search warrant for 416 Vine Street. While executing the search warrants, police recovered over 1,200 individually packaged bags of heroin totaling 24.5 grams. On September 26, 2016, the trial court held a suppression hearing and denied Appellant relief. Appellant proceeded directly to a stipulated non-jury trial wherein he was convicted of the aforementioned charges. On December 14, 2016, the trial court sentenced Appellant to 27 months to six years of imprisonment and imposed this sentence consecutive to the sentence at docket number 5110-2013. A timely appeal followed.[2]

---

[2] As the trial court noted, and appellate counsel concedes on appeal, counsel for Appellant filed a timely single notice of appeal challenging the judgment of sentence at all three docket numbers on December 28, 2016. *See* Appellant's Brief at 14; *see also* Trial Court Opinion, 3/29/2017, at 1-2. Generally, taking one appeal from separate judgments is not acceptable practice and is discouraged. *See Dong Yuan Chen v. Saidi*, 100 A.3d 587, 589 n.1 (Pa. Super. 2014), *citing* Pa.R.A.P. 341, Note and Pa.R.A.P. 512, Note. However, we have overlooked such procedural error when the trial court has addressed the issues pertaining to each order. *Id.* Moreover, as discussed later, because Appellant challenges the trial court's imposition of his sentence at docket 753-2016 consecutive to the sentence imposed at docket number 5110-2013, the issues raised on appeal overlap. Each appeal also specifically challenges suppression. Had Appellant filed separate notices of appeal, this Court could have *sua sponte* ordered consolidation for
*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issues for our review:

1. [At docket 5110-2013, d]id [Appellant's parole agent] have reasonable suspicion to engage in a warrantless confiscation and search of Appellant's cellphone pursuant to 61 Pa.C.S.A. [§] 6153?

2. Based on the United States and Pennsylvania Constitutions, the trial court erred in denying the suppression of all evidence recovered from the properties located at 3 West Street and 416 Vine Street [at docket 753-2016?][3]

3. Whether the trial court erred in finding that the prohibition against nighttime warrants applied?

4. Whether the trial court erred in sentencing Appellant to consecutive sentences under the circumstances?

Appellant's Brief at 11.

In his first issue presented, with regard to docket 5110-2013, Appellant claims that the trial court erred by denying suppression of

_(Footnote Continued)_ ─────────────────

appellate review. **See** Pa.R.A.P. 513 ("…where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.) After receiving the notices of appeal, on January 6, 2017, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely, raising issues related to docket numbers 5110-2013 and 753-2016. The trial court issued a single opinion pursuant to Pa.R.A.P. 1925(a) on March 29, 2017, addressing all of Appellant's issues related to both cases. For all of these reasons we will overlook the procedural misstep of filing a single notice of appeal.

[3] Appellant's statement of questions involved does not correspond with his subsequent argument. To avoid confusion, we have provided Appellant's second issue as set forth in the argument section of his appellate brief. **See** Appellant's Brief at 30 (complete capitalization omitted).

evidence recovered from his cellphone and residence upon finding violations of the terms of his parole. Appellant's Brief at 19-29. More specifically, Appellant claims that once his parole agent witnessed a curfew violation and received confirmation that Appellant tested positive for controlled substances, the investigation into the violations should have concluded. *Id.* at 20. "Thus, Appellant asserts that two positive urines and a curfew violation, both of which were confirmed, would not give the parole agents the right to seize, and search his cellphone or his residence at that time because the two violations were no longer suspicions and had been confirmed prior to the search of the phone." *Id.* at 27. As such, Appellant argues that the subsequent search of his cellular phone and residence were illegal and the evidence obtained required suppression.

Our standard of review for challenges to the denial of a suppression motion is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted....Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus,

the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Haslam*, 138 A.3d 680, 685–686 (Pa. Super. 2016) (citation omitted).

Upon review of the trial court opinion, the parties' briefs, the facts of this case, and the applicable law, we conclude that the trial court's factual findings in denying Appellant's suppression claim are supported by the record. The trial court first recognized that because Appellant was on parole, he had a diminished expectation of privacy and parole officers need only a reasonable suspicion that a parolee is violating the law in order to conduct a search of the parolee's person or property.[4] Trial Court Opinion, 3/31/2017, at 7-8. The trial court considered the statutory factors set forth at 61 Pa.C.S.A. § 6153 and determined the parole agent in this matter had the requisite reasonable suspicion to conduct the subsequent searches. *Id.* at 8-9. The trial court found that the parole agent knew Appellant's criminal history and was supervising him for a prior PWID conviction. *Id.* at 9. When Appellant missed curfew, he provided conflicting statements about his

---

[4] Appellant relies upon the United States Supreme Court decision *Riley v. California*, 134 S. Ct. 2473 (2014) for the proposition that "there is an intimate expectation of privacy in the cellphone and it is not subject to a search without a warrant." Appellant's Brief at 27. However, we have specifically held that *Riley* is inapplicable, and a warrantless search of a cellular telephone is proper, when the search involves a parolee and the parole officer has reasonable suspicion to believe there was a violation of parole. *See Commonwealth v. Murray*, 174 A.3d 1147, 1156 (Pa. Super. 2017).

whereabouts. *Id.* He tested positive for controlled substances, and did not have a prescription, which showed Appellant had access to illicit narcotics. *Id.* The parole agent also personally witnessed Appellant with a large sum of cash and a cellular telephone, even though Appellant was not employed.[5] *Id.*

Section 6153 only requires reasonable suspicion that the cellular telephone contained evidence of violations. There is simply no provision that a parole officer must stop searching once a suspicion is confirmed, as Appellant suggests. Moreover, despite Appellant's claim that breaking curfew and testing positive for controlled substances were the only potential violations the parole agent was investigating, it is also clear from a totality of the evidence of record that the parole agent had the requisite reasonable suspicion to believe that Appellant was also procuring and potentially selling narcotics. The facts here suggested drug dealing (i.e., lack of gainful employment coupled with possession of a cellular telephone and cash), which is a separate violation of parole from using narcotics and missing curfew. Hence, the subsequent searches were proper and suppression unwarranted. We conclude that there has been no error at docket 5110-2013 and that the March 31, 2017 opinion meticulously, thoroughly, and

---

[5] Appellant does not challenge or address this determination.

accurately disposes of Appellant's issue on appeal. Accordingly, we adopt its rationale as our own.

In his second issue presented, Appellant claims the trial court erred in denying suppression of evidence recovered from 3 West Fourth Street and 416 Vine Street at docket 753-2016. Appellant's Brief at 30. More specifically, Appellant argues that police had a warrant for his arrest in an unrelated, alleged burglary and that the trial court erred "by finding that exigent circumstances were present that permitted the initial warrantless entry into 3 West Fourth Street that led to the observation of drug related materials and ultimately the search warrant that led to the finding of contraband." *Id.* Additionally, Appellant challenges the protective sweep at 3 West Fourth Street alleging that, because he was arrested outside, Appellant claims there were no issues with officer safety or any risk of destruction of evidence inside "in this arrest for the alleged burglary." *Id.* at 31. He claims "[t]he [possibility that Appellant carried a] gun was known [by police] prior to going to the premises and, the discarding of drugs occurred outside the property with no indication the drugs were related to the property." *Id.* at 33 (case citation omitted). Appellant posits that if the investigating officer "already knew prior to going into the property without a warrant that he would be looking for evidence of criminal activity such as a gun or drugs, he should have obtained the warrant before he went, or at least justified his reason for not being able to timely secure a warrant prior to engaging in the operation." *Id.* at 35. Appellant also argues that it was

unreasonable for the police to conduct a protective sweep of 3 West Fourth Street. *Id.* As such, Appellant argues:

> The trial court concluded that the items of contraband observed during the initial illegal foray into 3 West Fourth Street would support probable cause to issue the search warrants for the two properties[, 3 West Fourth Street and 416 Vine Street.] Thus, if [] the initial foray into the property [at 3 West Fourth Street] was not constitutional, then the items seized pursuant to the search warrant are the fruit of the poisonous tree and both sets of respective items confiscated from each property must be suppressed[.]

*Id.* at 36.

Here, the trial court first recognized that there is an exigency exception to the search warrant requirement. Trial Court Opinion, 3/31/2017, at 14-15. The trial court then examined the 10 established factors regarding exigency and concluded that the exception to the warrant requirement had been met. *Id.* at 15. Although police had a warrant for Appellant's arrest in conjunction with an alleged burglary, they were also investigating illegal drug activity at that location. *Id.* at 16 (record citation omitted). The investigating officer was aware that Appellant previously carried a weapon. *Id.* Appellant fled from police and they recovered packets of heroin that Appellant discarded while fleeing the officers. *Id.* Police were concerned that Melissa Griffin, who was still inside the residence, could destroy additional evidence. *Id.* Thus, the trial court determined "that the initial entry into the residence was permitted pursuant to exigent circumstances." *Id.* The trial court then concluded that the police were

justified in conducting a protective sweep of the property to ensure their safety and were not required to ignore the contraband seen in plain view. *Id.* at 17. The trial court found that police knew at least one other person was present and the protective sweep was limited to locating people inside the residence, in places where a person could hide. *Id.* at 18.

Based upon our standard of review, we discern no error or abuse of discretion in denying suppression at docket 753-2016. Police believed that Appellant could have been armed. When they attempted to execute an arrest warrant, Appellant fled and discarded narcotics. It was reasonable for police to believe they would find additional evidence of narcotics in the residence Appellant recently exited and they knew that Griffin was still inside and could destroy evidence. Moreover, police did not uncover a firearm upon Appellant's arrest and, thus, recognized that their safety was still compromised. Accordingly, exigent circumstances were present and a protective sweep of the property permissible. Thus, suppression was unwarranted. We conclude that there has been no error in this case and that the March 31, 2017 opinion meticulously, thoroughly, and accurately disposes of Appellant's issue on appeal. Again, we adopt its rationale for denying suppression.

In his third issue presented, Appellant again challenges the trial court's decision to deny suppression at docket 753-2016. Appellant's Brief at 39-46. Appellant claims that the initial entry into 3 West Fourth Street, as well as the subsequent searches executed by search warrant of 3 West

Fourth Street and 416 Vine, were conducted in violation of the prohibition on executing searches at nighttime. *Id.* He claims that "[n]othing in the warrant explained why a nighttime search of either property was necessary" and the trial court erred by concluding "the nighttime search was appropriate due to fear of destruction of evidence and the fact that police were holding the location secure while waiting for the search warrant." *Id.* at 41.

The trial court and the Commonwealth assert that Appellant waived this issue. *See* Trial Court Opinion, 3/31/2017, at 21; Commonwealth's Brief at 17. Upon review, we agree. We have previously determined:

> "[A]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 903 A.2d 1269, 1272–1273 (Pa. Super. 2006); *Commonwealth v. Thur*, 906 A.2d 552, 566 (Pa. Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression.").

> > It is well-settled law that motions to suppress evidence are decided prior to the beginning of trial. Moreover, pre-trial rulings on the suppression of evidence are final. In sum, suppression motions must ordinarily be made before the trial to the suppression court, they must be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for the suppression, and the suppression court's determination is to be final, except in the case of evidence not earlier available.

- 12 -

> ***Commonwealth v. Metzer***, 634 A.2d 228, 233 (Pa. Super. 1993) (citations omitted).
>
> Although the burden in suppression matters is on the Commonwealth to establish "that the challenged evidence was not obtained in violation of the defendant's rights," Pa.R.Crim.P. 581(D), that burden is triggered only when the defendant "state[s] specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." ***Commonwealth v. McDonald****,* 881 A.2d 858, 860 (Pa. Super. 2005). Thus, when a defendant's motion to suppress does not assert specifically the grounds for suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion. ***McDonald****,* 881 A.2d at 860; ***Commonwealth v. Quaid****,* 871 A.2d 246, 249 (Pa. Super. 2005) ("[W]hen a motion to suppress is not specific in asserting the evidence believed to have been unlawfully obtained and/or the basis for the unlawfulness, the defendant cannot complain if the Commonwealth fails to address the legality of the evidence the defendant wishes to contest.").

***Commonwealth v. Freeman***, 128 A.3d 1231, 1241–1242 (Pa. Super. 2015). Upon review, Appellant's omnibus pretrial motion to suppress did not challenge the search of property based upon the time of night. ***See*** Omnibus Pre-Trial Motion, 3/11/2016, (unpaginated) at 2, ¶ 5(a)-(g). Thus, we conclude that Appellant waived this issue.

Finally, Appellant contends that the trial court erred in sentencing him to an aggravated range sentence at docket 5110-2013 and imposing it consecutively to the sentence at docket 753-2116. Appellant's Brief at 49-50. Appellant also argues that the trial court failed to consider "mitigating circumstances and salient rehabilitation factors[,]" including his "drug addiction" and "horrific childhood." ***Id.*** at 51 and 61. Appellant

claims these failures resulted in him receiving unreasonable sentences. **Id.** at 61.

We have previously determined:

It is well-settled that "[t]he right to appeal a discretionary aspect of sentence is not absolute." **Commonwealth v. Dunphy**, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, an appellant's appeal should be considered as a petition for allowance of appeal. **Commonwealth v. W.H.M.**, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010):

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id.** at 170 (*citing* **Commonwealth v. Evans**, 901 A.2d 528 (Pa. Super. 2006)). Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. **See Commonwealth v. Kenner**, 784 A.2d 808, 811 (Pa. Super. 2001), *appeal denied*, 796 A.2d 979 (Pa. 2002).

**Commonwealth v. Radecki**, 2018 WL 989152, at *21 (Pa. Super. 2018).

Here, the first three requirements have been met. Appellant filed a timely appeal, preserved the issue in a post-sentence motion, and included a statement pursuant to Pa.R.A.P. 2119(f) in his appellate brief. Thus, we turn to whether Appellant raises a substantial question to implicate our review.

We have previously determined:

We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted), *appeal denied*, 964 A.2d 895 (Pa. 2009). "[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists." **Commonwealth v. Christine**, 78 A.3d 1, 10 (Pa. Super. 2013), *affirmed*, 125 A.3d 394 (Pa.2015).

It is settled that this Court does not accept bald assertions of sentencing errors. **See Commonwealth v. Malovich**, 903 A.2d 1247, 1252 (Pa. Super. 2006).

\* \* \*

We consistently have recognized that excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review. **See Commonwealth v. Caldwell**, 117 A.3d 763, 769 (Pa. Super. 2015) (*en banc*) (stating, "[a] court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[.]"), *appeal denied*, 126 A.3d 1282 (Pa. 2015); **see also Commonwealth v. Ahmad**, 961 A.2d 884, 887 n.7 (Pa. Super. 2008) ; **Commonwealth v. Pass**, 914 A.2d 442, 446–447 (Pa. Super. 2006).

\* \* \*

- 15 -

[However, a]s we explained in **Commonwealth v. Dodge**, 77 A.3d 1263 (Pa. Super. 2013)]:

> A defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges **if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence**; however, **a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question**.

**Dodge**, 77 A.3d at 1270 (emphasis added).

\* \* \*

> We cautioned that although Dodge had raised a substantial question in his particular case, a defendant does not raise a substantial question "where the facts of the case [being reviewed] do not warrant the conclusion that there is a plausible argument that the sentence is *prima facie* excessive based on the criminal conduct involved." **Id.** at 1271.

**Radecki**, 2018 WL 989152, at \*22 (parallel citations omitted).

Here, the facts of the cases do not warrant the conclusion that the consecutive nature of the sentences were *prima facie* excessive based upon the criminal conduct involved.[6] Here, there were two separate criminal cases involving different crimes, one involving a firearm. We conclude that

---

[6] We further note that the precedent we relied upon above addresses the imposition of consecutive sentences within the same criminal information. Here, however, Appellant challenges the consecutive nature of sentences imposed in two separate criminal informations. There is no precedent declaring that such sentences are contrary to sentencing norms or inconsistent with our Sentencing Code.

Appellant failed to raise a substantial question regarding the consecutive nature of the sentences.

However, "[w]e have held that a substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances." *Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012). Thus, we will address the merits of Appellant's claim that his aggravated range sentence imposed at docket 5110-2013 was excessive and an abuse of the trial court's discretion.

Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002) (citations omitted). More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

[T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

In every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must

- 17 -

provide in open court a contemporaneous statement of reasons in support of its sentence. 42 Pa.C.S.A. § 9721; *see also Commonwealth v. Eby*, 784 A.2d 204, 205–206 (Pa. Super. 2001).

> The statute requires a trial judge who intends to sentence a defendant outside of the guidelines to demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as [it] also states of record the factual basis and specific reasons which compelled [it] to deviate from the guideline range.

*Commonwealth v. Gibson*, 716 A.2d 1275, 1276–1277 (Pa. Super. 1998) (internal quotations omitted).

> When evaluating a challenge to the discretionary aspects of sentence [], it is important to remember that the sentencing guidelines are advisory in nature. *Id.* at 1277. If the sentencing court deems it appropriate to sentence outside of the guidelines, it may do so as long as it offers reasons for this determination. *Id.* "[O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is *not un*reasonable, we must affirm a sentence that falls outside those guidelines." *Id.* (citations omitted, emphasis in original).

*Bowen*, 55 A.3d at 1263–1264 (Pa. Super. 2012).

Moreover, where the sentencing court had the benefit of reviewing a

pre-sentence investigation report (PSI), an appellate court is required to:

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of

engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

***Commonwealth v. Knox***, 165 A.3d 925, 930–931 (Pa. Super. 2017) (citation omitted).

In this case, there is no dispute that the trial court had the benefit of PSI reports prior to sentencing. Further, Appellant does not dispute the accuracy of those PSI reports. Thus, we presume that the trial court was aware of Appellant's mitigating circumstances and considered them when fashioning its sentence. Moreover, upon review of the record, the trial court placed its reasons for its sentence on the record, first recognizing that Appellant had a "not-so-wonderful childhood" and chronicling his addiction to controlled substances, but ultimately concluding that he "led a life of committing rather serious crimes, crimes that pose a significant harm and danger to other people and to the community, crimes involving addiction, distributing heroin, a situation that costs society and the police time and money to a considerable degree [and] he admits to long-term selling of controlled substances for profit." N.T., 12/14/2016, at 43. The trial court also stated that it believed a lengthy term of imprisonment was necessary to

protect the public, because efforts at prior rehabilitation with Appellant were unsuccessful. *Id.* For these reasons, an upward departure from the sentencing guidelines was not unreasonable and we discern no abuse of discretion in sentencing Appellant.

Therefore, we affirm Appellant's first two issues based on the trial court's March 31, 2017 and adopt it as our own. Because we have adopted the trial court's opinion, we direct the parties to include the trial court's opinion in all future filings relating to our examination of the merits of these appeals, as expressed herein. Moreover, Appellant waived his third appellate issue and we discern no sentencing error. As such, all of Appellant's appellate issues fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/9/18

IN THE COURT OF COMMON PLEAS OF MONTGOMERY (CO'UNTY PENNSYLVANIA
CRIMINAL DIVISION33

COMMONWEALTH OF PENNSYLVANIA:

:
:
:

CP-46-CR-0005110-2013
CP-46-CR-0000753-2016
CP-46-CR-0000745-2016

:
:
:
:
:
:
:

DESHAWN SMITH

:

116 EDA 2016

## OPINION

CARPENTER J.                                                    MARCH 29, 2017

## INTRODUCTION

Appellant, Deshawn Smith (Smith"), has filed this counseled appeal from three distinct and separate judgments of sentence. Each of these three appeals at their respective docket numbers listed above ariŠe from three different set of events and facts and involve different crimes, despite the fact that sentencing on all three files occurred 011 the same day, December 14, 2016,

•ar two separate sentencing hearings. This Court notes that appellate counsel has violated Pa.R.A.P. 341, Note which states, "lal party needs ro file only a sinele notice or appeal to secure review of prior non-final orders that are made final by the entry of a final order, see K.ll. v. I.R., 82G A.2cl 863, 87071. (Pa.



2003) (following trial); <u>Betz v. Pneumo Abex LLC</u>, 44 A.3d 27, 54 (Pa. 2012) (summary judgment). Where, however, one or more orders resolves issues arisinp; on more than one docket or relating to more than one judgment,

SUPERIOR COURT

APR - 5 2017,

PHILADELPHIA

separate notices 01' appeal must be filed. <u>Commonwealth V. C-M.K.</u>. 932 A.2d 111, 1 13 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 Of two persons' judgments of sentence.)" However, in this case appellate counsel filed a single appeal listing all three cases in his notice of appeal. While this practice is prohibited by the rules and this appeal may be quashed, this Court will address the merits ol" the three appeals in this 1925(a) Opinion given that the Superior Court may exercise its discretion to consider the merits of these appeals.

First, Smith appeals from his judgment of sentenced entered on December 14, 2016, at docket CP-46£R-0005110-2013 ("5110-2013"), imposed following a stipulated non-jury trial on July 8, 2016, where he was convicted of persons not to possess firearms [1] and possession with intent to deliver. On appeal, Smith contests the denial of his suppression motion.

Smith has also appealed from his judgment of sentence entered on December 14, 2016, at docket CP-46-CR-0000753-2016 ("753-2016"), imposed following a stipulated non-jury trial on September 26, 201 G, all which he was .

found guilty of possession with intent to deliver, criminal conspiracy, resisting arrest and recklessly endangering another person.

Finally, Sillilll has appealed from his judgment of sentence entered

onDecember 14, _____ docket CP-46-CR-0000745-2016 ("745 201ᵏ"),

1    18 PA.C.S.A. §6105(a)(1).

²    35 P.S. §780-113(a)(30).

imposed foll(jwing his entry ot a guilty Plea on the same date to criminal trespass [β] . Smith did not raise any issues in his court ordered concise statement of errors complained of on appeal relating to this guilty plea; therefore, all issues are waived in this regard, and this 1925(a) Opiflion focuses on Smith's convictions at dockets, 5110-2013 and 7532016.

<u>DOCKET 5110-2013 FACTUAL AND PROCEDURAL HISTORY</u>

After the denial of Smith's motion to suppress on June 15, 2016, the stipulated non-jury trial held on July 8, 2016, established the following. On June 19, 2013, a search by parole agents of Smith's residence turned up the following items: numerous unused read baggies, a digital scale, 932 baggies of heroin. (Negotiated Guilty Plea/Stipulated Bench Trial 7/8/16 p. 13). The total weight of the heroin was 29.71 grams. Id. at 16. In addition, parole agents found an unloaded black and silver Colt .45 caliber handgun underneath the mattress in the bedroom that belonged to Smith. Id. at 16. If an expert in the field of narcotics were to have testified at trial, he or she would have opined that based the amount of heroin and the manner in which it was packaged, the scale was found, the unused baggies and the text messages

round on Smith's cell phone Smith possessed the heroin willi the intent to deliver. Ill, at 17.

On December 14, 2010, Smith was sentenced 10 an aggregate term of six years, three months 10 14 years' imprisonment. A timely posvsentc:nce

---

[4] 18 Pa.C.S.A. §3503(a)(1)(i).

motion wag filed, which was denied by way of an order entered on December 27, 2016. A timely notice of appeal followed on December 28, 2016.

I. <u>Whether there was reasonable suspicion to seize and search Smith's cell phone and to search his residence.</u>

<u>DISCUSSION</u>

I.<u>There was reasonable suspicjon to seize and search Smith's cell phone and to search his residence.</u>

Smith contends that the motion to suppress was improperly denied. He argues on appeal that Agent Dominick lacked reasonable suspicion to seize and search hi$ cell phone and 10 search his residence,

The suppression testimony given on June 15, 2016, established the following facts. Parole Agent Scott Dominick began supervising Smith in November of 2012, a month after Smith was paroled from his one-and-a-half to four year sentence for possession with intent to deliver. (Motion to Suppress 6/15/16 5, 6). Agent Dominick reviewed the conditions and rules of regulations of supervision. Id. at 7 - 8. One of the special conditions was, "You shall achieve nepative results in screening tests randomly conducted by the Board

to detect your use of controlled substances..." Id. al 9 - TO. Smith also had a curfew of 8:00 p.m- tillliA 6:00 a.m. Id. at 10 l l .

On June .1 1 , 2013, Agent Dominick did a curfew check of Smith's approved residence al 447 East Elm Street, Apartment E-103, Pottstown. Ill. at Il. The agent arrived there at 10:05 p.m. Id. at I l. Although Smith lived there with his girlfriend, his son and his sisler, only Smith's sister and son were at the apartment. Idž at    ] 2. Smith and his girlfriend were missing. Id. at 12. Smith's sister told Agent Dominick that he was at Walmart with his girlfriend. Id. at 12. About two minutes later, as Agent Dominick was about to leave the residence, Smith's girlfriend entcred the house through a back door, as opposed to the front door. Id. at 13. She told the agent that Smith was out front with the car, although she insisted she had driven the car. Icl. at 13. The agent asked her some follow up questions. Id. Eventually, Agent Dominick left the residence in order to find Smith, which he did at about 1 0:13 p.m. out in the parking lot area of the apartment complex. Id. at 13 - 14. There was a car that was just leaving. Icl. at 14. In response tÔ the agent's questions, Smith told him that his friend had driven him. Id. There were additional inconsistent statements told to the agent by Smith. Id. As a result, Agent Dominick told Smith to report to Norristown the next day to discuss the curfew violation. Id..

The following day, on June 12, 2013, Smith reported to the Norristown office and was given an instant urine test. Id. The test showed that Smith tested positive for Oxycodone. Id. at 14 - 15. Upon questioning, Smith rejleralecl that he had been jn the hospital, but gave a different version ol' events

than lie had the previous night. I(l. at .1 5. He indicated thal lye might have been given something [here. Id. at IS. Smith had no paperwork or prescription Ironm rhe hospital al thal time. [d. Therefore, Agent Dominick instructed Smith to report on June 19 th to provide the hospital paperwork..

On June 19, 2013, Smith reported as instructed and did bring hospital paperwork that showed that he was in the emergency room on June

10 [th] for a sore throat. Id. at 16. Smith was given a prescription at the hospital, although it was not for a controlled substance. Id. Agent Dominick gave Smith another urine test, which again testing positive for Oxycodone. Id. In their ensuing conversation, Smith admitted taking Percocet and that he did not have a prescription for it. Id. In addition, when Smith carne through security at the parole office, the agent: saw that he had a cell phone and a wad of money, which was seemed unusual because Smith was not employed in the seven months that Agent Domiliick had been supervising him- Id. at 18. Although the agent did not know at that time how much money was in the wad. ,ld.

Because of the missed curfew, inconsistent statements and the two positive tests of urine, Agent Dominick told Smith to wait in the lobby while he had a conversation with his supervisor, Id. at 17 18. Agent Smith reviewed the situation with his supervisor, Agent David Dettinburn. Id. at 18, 35 - 37. Together they decided to have a supervisor's conference, which is a meeting with the parolee, parole agent and the supervisor, to discuss the violations and determine how proceed. Id. at 18 - 19. During that conference, Smith's phone was searched by Ille supervisor, and he did find incriminating evidence. Id. al: .19 - 20, 37. For example Agent Dertinburn testified thal in the text messages where Smith was talking about his positive urine test he states, "Nar it's come up for perc again." Agent Det:tinburn believed this to be referring to his using drugs. Id. at 40; see also, Exhibit "C-3", Cell Phone Exvraction Report. Also, Agent Detlinbtll'il testified further that the text messages read, "How many do you want?" which i l was replied, "l need two." Agent Deltinburn believed this.

to mean that someone ig requesting two bundles or baggies Of drugs from Smith. Id. at 41, Further, the tests read, <sup>O</sup>Can I get six for 50? Pinky gonna come meet you cause I got my son." Agent Dettinburn testified that this means six bags for $50.00. rd.

Smith was detained. Id. at 20. He was also searched, at which time Smith was found to have        on his person. Jd. Slñith trjed to explain away the money. Id. at 32 - 33. He told the agent that the money was from selling DVD'g or tee shifts-   Agent Dominick told this Court that at this point it became clear to him and his supervisor that Smith's residence would be searched, Id. at 20.

Our appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, the appellate court may consider only Ille evidence of the Commonwealth and so nmuctð of the evidence ror the defense as remains uncontradicted when read in the context of the record as a whole. The suppression court's legal conclusions are binding 011 an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions ol' law of the courts below are subject to our plenary review. <u>Commonwealth v. Jones</u>, 988 A.2d (jA9,

654 (Pa. 2010) (citations, quotations, and ellipses omitted).

Ag a general principle, a parolee has a diminished expectation of privacy by virtue of their status as the assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law; therefore, reasonable suspicion to search a parolee's person or property is sufficient. Commonwealth v. Smith, 85 A,3d 530, 533 (Pa-Super. 2014) (citing Commonwealth v. Colon, 31 A.3d 309, 315 (Pa.Super.2011) quoting Commonwealth v. Hunter, 963 A.2cl 545, 351-52 (Pa-Super. 2008)). A state parole agent's authority under the circumstances encountered in the instant case is governed by 61 Pa.C.S. § 6153—"Supervisory S relationship to offenders."

The specific sections of the statute that apply to the conduct of Agent Dominick read as follows:

(d) Grounds for personal search of offender.--

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

(3) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. NO prior approval shall be required ror a personal search.

61 Pa.C.S.A § 6153(

The statute also provides a list of factors for consideration when

9

determining whether sucll reasonable suspicion exists:

> (U) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the
> following factors, where applicable, may be taken into account:
> (i)   The observations of agents.
> (ii)  Information provided by others.
> (iii) The activities of the offender.
> (iv)  Information provided by the offender.
> (v)   The experience of agents with the offender.
> (vi)  The experience of agents in similar circumstances. (vii) The prior criminal and supervisory history of the offender.
> (viii) 'The need 10 verify compliance with the conditions of' supervision.

61 Pa.C.S.A. S 6153(

An examination of the evidence presented by the Commonwealth at the suppression hearing, as applied to the factors listed above, led this Court to find that there was abundant reasonable suspicion of a parole violation in view of the totality of the circumstances surrounding Agent Dominick's encounters with Smith. This Court considered Smith's criminal history. Smith was at the time being supervised on parole for a possession witli intent to deliver conviction. This Court also considered that Smith had two positive urine tests for drugs; Smith had violated his curfew; that there was a series of inconsistent statements about his whereabouts and conduct on the night of the curfew violation and that the observations of Agent Dominick of the wad of cash Smith had in his possession despite being unemployed just prior to the

10

search of the cell phone. These factors all supporled this Court's finding ol' reasonable suspicion to search Smith's cell phone. The search of the cell phone gave additional incriminating evidence that led Agent: Dominick's supervisor, Agent David Dettinburn to conclude tor all purposes that a search of [he residence was appropriate. Accordingly, based upon these considerations this Court found that Agent Dominick had the requisite reasonable suspicion to conduct the searches.

CONCLUSION

Based on the foregoing analysis, the judgment of sentence imposed on December        2016 in regard to docket 5110-2013, Should be affirmed.

11

On September 26, 2016, a suppression hearing was held, at the conclusion of which suppression was denied. Directly after Smith's motion to suppress was resolved, Smith proceeded to a stipulated non-jury tfia-l, where he was found guilty of the aforementioned charges. Smith filed a postsentence motion, challenging The discretionary aspects of his sentenceL The motion was deniecL Subsequently, a l'imely notice ot appeal was tiled, which gives rise to this appeal-

### ISSUES

Issue seven as set forth in Smith's concise statement of errors complained of on appeal seems to merge testimony from this case with an assertion of error from the previous case. It can't be discerned by this Court, the error that Smith wishes to have reviewed in Issue seven; therefore, it will not be addressed.

1. Whether there were exigent circumstances giving rise to a protective sweep of 3 West Fourth Street.

II. Whether there was sufficient orobable cause to issue a search warrant ror 3 West Fourth Street and 416 Vine Street.

Ill. Whether the nighttime search was proper.

IV. Whether live imposition of consecutive sentences was proper.

### DISCUSSION

1. There were exigent circumŠtances giving rise to a protective sweep of 3 West Fourth Street.

The Suppression Hearing established the following facts. Sergeant

Edward Kropp, Jf., an experienced drug investigator, of the Pottstown Police Department, Community Response Unit was present when Smith was taken into Custody on December 179 2013. (Motion to Suppress/StipulateçI Bench Trial 9/26/16 op. 5 6). As Sergeant Kropp was walking back to his office at Pottstown Borough Hall he saw Smith sitting in the interview room. [d. at 7. Smith who is familiar with the sergeant voluntarily said to him "How are you going to charge me with what was in that apartment? I don't even live there. J live at 416 East Vine Street." Sergeant Klopp responded to Smith telling him to talk to the people attempting to interview him about that," and he continued walking to his office. 'd. 7 - 8.

Smith had been arrested at 3 West Fourth Street, Pottstwon, Montgomery County. Id. at 8. Sergeant Kropp was present for that arrest, where he was initially on surveillance of that properly. lc[. at 9- The sergeant had seen Smith go into the residence, by the time DetectÎve Kropp recognized it was Smith who he had know from a prior occasion, Smith was already inside. Id. at 9, 25. Detective Kropp decided to wait until Smith had come out or the residence because it was known [hal there was a firearm involved in his prior history; therefore, the police believed it to be safer 10 wait until Smith exited

1 2

the residence rather than making entry into an apartment with a potential for Smith to have a weapon, Id. at 25.

Upon seeing Smith leave, the police pulled up and Smith fled. Id. at

9. As he fled, Sfnith discarded his cell phone and heroin, Id. at 9 I O. The police knew that Smith'S co-defendant was still inside the residence, because Sergeant Kropp watched her arrive with Smith but did not see her leave. Ids at 10.

Once Smith was arrested, the police determined that they would seek a search warrant for the premises at 3 West Fourth Street. Id. at 10. Sergeant Kropp wanted to secure the residence for the application of that search warrant. at 10. He knew there was another person present and he was concerned about the destruction of evidence. Id..

The police opened the door of the residence, which was unlocked. Id. at 10 - 1 l. They announced "Police," and asked if anyone was present. at I1 . Eventually, Smith's co-defendant, Melissa Griffin said she was in the bedroom, and the police told her to come out with her hands up. [d.

For safely, the police went inro every room ol' Ille apartment to ascertain il there were any other people present. Id- at 11 - 12. In doing this, they saw items of contraband and other items that would support probable cause. Id- at 13. For example, Detective Kropp observed that there were three cell phones and a of' money ill one room- Id. 111 another, he saw items of paraphernalia. None of this seized. Id. at .13 14. However, they were in

plain view and thé police put these observations into the body of the search warrant. Id. at 23.

This was a nighttime search, and the police put the reasons for the search in the warrant. Id. at 19.

At the conclusion of Detective Kropps's testimony and argument of counsel, this Court put its findings of fact and conclusions of law on the record. The motion to suppress was denied.

Our appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, the appellate court may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law 10 the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. commonwealth v. Jones, 988 649,

654 (Pa. 2010) (citations, quotations, and ellipses omitted).

The Fourth Amendment to the United Slates Constiturjon and Article 1, Section 8 of the Pennsylvania Constitution protect citizens against: unreasonable searches and seizures. Both constitutions forbid police 10 enter a private home without a warrant absent probable cause and an exception to the warrant requirement, such ag exigent circumstances or consent.

15

Commonwealth v. JQhnson, 68 A.3d 930, 935 (Pa.Super. 2013).

Exigent circumstances arise only where "the need for prompt police action is imperative, either because the evidence sought to be preserved i$ likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger ...s" Commonwealth v. Lee, 972 A.'2d l, 5 (Pa.Super. 2009) (citation omittedL Various factors need to be taken into account to aSsess the presence of exigent circumstances; for example: (l) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether there is a Strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is peaceable; (7) the timing of the entry; (8) whether there is hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant; and (l O) whether there js a danger to police or other persons inside or outside ov the dwelling to require immediate and swift action. In analyzing exigent circumstances, courts must balance the needs ol' law enforcement against the rights and liberties of private citizens. Johnson 68 A-3d al 937 (citation omitted). The Commonwealth bears the burden ol' presenting clear and convincing evidence Ihal [he circumstances surrounding the opportunity to search were truly exigent and thal the exigency was ill no way attributable to the decision by the police ro Forego seeking a warrant. Commonwealth v.

<u>Bostick</u>, 958 A.2d 543, 556-557 (Pa-super. 2008) (Citation omitted). Moreover, all decisions made pursuant to the exigent circumstances exception must be made cautiously because it is an exception that by its nature can very easily swallow the rule unless applied in only restricted circumstances. Id. at 557.

In this case, an examination of the above delineated factors reveals that there were exigent circumstances in this case sufficient to justify the warrantless entry Of the police into 3 West Fourth Street, (Motion to Suppress/Stipulated Bench Trial 9/26/16 p, 26). The police were investigating Smith illegal drug activity in this location. The investigation into Smith was a part of an ongoing and larger investigation. Id. at 25. Second, Smith was known by Detective Kropp to have a weapon in his past, and he believed on the night of the search, Smith might be jn possession of a weapon. Id. at 23. This gave police urgency. Additionally, Detective Kropp observed Smith enter the property a 3 West Fourth Street with co-defendant Griffin. Smith had discarded heroin upon leaving the residence and fleeing from the police after they announced, "Police, Stop." There were about 14 bags of heroin that Smith discarded. Detective Kropp explained at the suppression hearing that he was concerned about the destruction of evidence because he knew that Griffin remained in the residence. Further, Smilll was apprehended a very short disvatvce from that location.

Having concluded that the initial entry into the residence was

17

permitted pursuant to exigent circumstances, we turn ro [he legitimacy of the protective sweep ol' the residence that ultimately uncovered drugs and drug contraband. It ig well settled that "lu]nder emergent. circumstances, protective sweeps are a well-recognized exception to the warrant requirement." Commonwealth v. Witmani 750 A.2d 327, 335 (Pa.Super. 2000) A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v, Buie, 494 US. 325, 327, 110 s,CT. 1003, L.Ed.2c1 27 (1990). sets forth two levels of protective sweeps. Id. at 334, 110 S.Ct. 1093. A properly conducted sweep is for persons. It cannot be used as a pretext for an evidentiary search. rt cannot be lengthy or unduly disruptive. It must be swift and target only those areas where a person could reasonably be expected to hide. Commonwealth v. Crouse, 729 A.2d 588, 598 (Pa.Super. 1999). Although the purpose of a protective sweep is to assure officer safety, police officers are not required to ignore contraband they encounter in the course thereof. Commonwealth v. Potts, 73 A.3d at 1275, 1282 (Pa.Super, 2013) ("If, while conducting a protective sweep, the officer should ... discover contraband other than weapons, he clearly cannot be required 10 ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances."); Crouse, 729 A .2cl al 593

(evidence observed in plain view durinp; a protective sweep is admissible). In

Crouse, supra, our Superior Courv held that properly conducted protective sweeps violate neither the Fourth Amendment [tol United States Constitution nor Article l, Section 8 ov the Pennsylvania Constitution. "A protective sweep is 'a quick and limit;ed search ol' premises, incident to an arresti and conducted to protect the safety of police officers or others.' «Commonwealth v. Taylor, 771 A.2d [261, 1267 (Pa. 2001) (quoting Marylann_yž Buie. 494 U.s. 325, 327 (1990)).

This Court found the search of 3 West Fourth Street was proper. There were exigent circumstances to support the protective sweep. The protective sweep and was limited to securing the premises and locating any persons inside. It is significant that the search immediately followed Smith's arrest as short distance away from this location. The police only looked in places where people could be. In addition, there may have been guns accessible to persons inside. They knew for a fact, that there was at least one other person was inside the residence. Therefore, the police entered the residence to conduct a protective sweep after exigent circumstances arose.

ll. There wa ficient prob•thle cause [tol is ue a search warrant for West Fourth Street and 416 Vine Street.

Smith's second issue on appeal, asserts that the search warrants for both 3 West Fourth Street and 416 Vine Street lacked sufficient probable cause.

The reviewñng court is not to conduct a de novo review of the

19

issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a commonsense, non technical manner. Comonwealth v. Gaglìardi, 128 A.3d 790, 794 (Pa. Super.

2015) (quoting Commonwealth v. Jones, 988 A.'2d 649, 655 (Pa. 2010)). This requires consideration of the totality of the circumstances. Commonwealth v. Galvin, 985 A.2d 783, 796 (Pa. 2009). The Court wjll consider whether the issuing authority correctly determined "given all of the facts and circumstances provided in the affidavit, including the veracity and basis of knowledge of the ersons supplying hearsay information, [that) there is a fair probability that contraband or evidence of a crime will be found in a certain locale." "It must be remembered that probable cause is based on a finding of the probability of criminal activity, not a prima lacie showing of criminal activity." Commonwealth v. Luton, 672 A.2d 819, 822 (Pa.Super. 1996)(citing Commonwealth v. Baker 615 A.2d 23, 25 (Pa. 1992)).

Moreover, "[i]f a substantial basis exists to support the magistrate 's probable cause finding, [the trial court] must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant." Jd. at 795 (quoting United States v. Leon, 468 U.S. 897,

20

914 (1984); citing United States v. Miknevich, 638 F.3d 178, 182 (3rd Cir, 2011) (internal citations and quotations omitted)). Furthermore, "a magistrate's determination of probable cause 'must be based lup101Þ facts described within the four corners ol' the supporting affidavit.'" Id. (quoting Commonwealth v. Dukeman, 917 A.2d 338, 341 (Pa. Super. 2007) (citing Commonwealth v. Smith, 784 A.2d 182, (Pa. Super.2001))).

In rhjs case, a fair reading of The affidavit Vor 3 Wesl Fourth Street presented 10 issuing authorily permitled the issuing authority 10 Find Iha( probable cause existed for the issuance Of the search warrant. The affidavit clearly states that the affiant, Officer Brandon Nf. Unruh, has the background and training in narcotics investigations. See, Exhibit "(I-I", Affidavit of Probable Cause for 3 West Fourth Street. The basis for the search warrant related to the charge of possession with intent to deliver. Based upon the information from four confidential informants, a controlled buy, evidence of drugs and other contraband found during the protective sweep of 3 West Fourth Street and information received from West Pottsgrove Police Department.

In addition, the affidavit. for 3 West Fourth Street presented to the issuing authority permitted the iŠsuing authority to find that probable cause existed for the issuance of the search warrant. Both affiants, Officer Um-uh and Detective Timothy Roeder, have the background and training in narcotic investigations. The basis for the search warrant included information

21

from four confidential informants, a controlled buy, information received from Melissa Griffin, evidence and drugs and other contraband found during the protective sweep of 3 West Fourth Street and evidence found from the search of 3 West Fourth Street.

A reading of both warrants demonstrates thal rhe police had good information Ihar Smith stayed at both locations, and spent tune there. The police did know of the relationship between Smith and Griffin. In the warrants the confidential informants established that Smith wag involved in an ongoing drug sale enterprise. These people had purchased drugs from Smith directly. Both warrants also contained the controlled buy ol' drugs from Smith and show

information demonstrating that smith traveled from one location to the other, The scarch of 3 West Fourth Street yielded a good amount of heroin, supporting the search of the Vine Street location.

In addition, both affidavits set forth considerable reasons based on the extensive experience of the two affiants that support the conclusion that a drug dealer such as Smith keeps guns, drugs and evidence ill locations where -he stays and lives. Therefore, this Court concluded that the iŠsuing authority had a substantial basis for a finding of probable cause to believe evidence of a crime, including contraband, would be found at both locations.

111. <u>The nighttime search was proper.</u>

Next, Smith contends that this Court erred ill finding that the prohibition on nighttime searches did not apply.

Our Supreme Court has mandated        search warrant shall authorize a nighttime search unless the affidavits show reasonable cause for such nighttime search." Pa-R.Crim,,P. 203(E). Due to the greater intrusion upon an individual's privacy occasioned by a nighttime search, some. greater justification than that required for a daytime search must be shown. See l?a.R.Crim.P. and Comment]. Put simply, llve affidavit for a warrant authorizing a nighttime search must show both probable cause and some reason why the search cannot wait unlit morning <u>Commonwealth v-Bowmaster,</u> 01 A.3d 789, 793-794 (Pa.Super. 2014) (italics and citations omitted).

However, to the extem that Smith challenges the nighttime aspect ol' the issuance ol' the search warrant, this issue is waived. Al the suppression hearing, Smith contested Smith's "statements made by [Smith], and the search warrant in question and the manner of entry into the building before the search warrant." (Motion to Suppress/Stipulated Bench Trial 9/26/16 p. 4). Appellate review of an order denying suppression is limited to an examination of the precise basis under which suppression initially was sought, and no new theories or relief may be considered on appeal. Commonwealth v, Little, 903 A.2d 1269, 1272-73 (Pa.Super.2006). Smith did not develop a specific argument regarding nighttime execution of the search warrant in his motion to suppress argued at the suppression hearing; therefore, it is waived. See Commonwealth v. Gordon, 328 A.2d 631, 642 (Pa.Super .1987) ("The raising of one particular theory in support of a suppression claim is not sufficient to preserve all other possible grounds for suppression of the same evidence")-

Even if thiS claim is reviewable on appeal, it does not provide Smith with relief. This Court found that the nighttime search was appropriate, giving the reasons supplied to the issuing authority, including the fear of destruction of evidence and the fact that the policc were holding location secure while wailing for the search warrant.

IV. The imposition of consecutive sentences was proper.

Last on appeal is Smith's contention that the imposition of consecutive sentences was excessive and did not lake into accounl his rehabilitative needs.

On December 14, 2016, a sentencing hearing was held on both Common Pleas dockel:s. 51 and 753-201 6. Al the sentencing hearing, the Commonwealth presented the testimony of Detective Michael Mark0ViCh, an 18 year veteran of the Pottstown Police Department. (Sentencing 12/14/16 p. 6). In regard to the 2013 case, docketed at 5110-2013, Detective Markovich was involved in the June 9, 2013 search warrant, at which time he recovered 932 bags of heroin from Smith's re$iclence. Yd, at 7. The detectivc opined that in 2013 heroin was in Pottstown; however, it was thc epidemic that it is today and that at that time this was by far the most heroin packaged for sale that he and Sergeant Kropp as the arresting officers had ever seen. Id. at 7. In 2015, when 1290 bags of heroin were recovered in regard to docket 753-2016, Detective Markovich opined that although heroin had taken off ill Pottst0Vv'n and was now the drug of choice, the nearly 90 bundles and over 1200 bags of heroin that was recovered wa$ the most heroin that had been seized in Pottstown- Id. at 8. The detective explained how hard the heroin epidemic has hit Pottstown. Id. at 8 -9.

Next, the Commonwealth called Lieutenant Erik Echevarria to testify. Lieutenant Echevarria is a seasoned investigator having been with the Montgomery County Detective Bureau since 1999. 'd. at 11. At some point he was assigned 10 the Narcotic Enforcement Team, which oversees drug investigations

throughoul Montgomery County. in particular, the lieutenant oversaw the Povtstown territory, and was involved the 201 5 search and seizure of 1290 baggies or heroin with a street value of about Id. at l?

13. The lieutenant opined that other than seeing such large amounts from a source city such as Allentown, Reading, Philadelphia, the seizure of that much heroin is an excessive amount in Montgomery County. Id- at 13 - 14, 15.

After the Commonwealth concluded, Smith testified. He told this Court about his difficult childhood. Icl,, at 17 19. He also told this Court that he has a fot1Eyear•oId son that he tries to take of financially. Id. at 20. Smith furtihe.r stated that when he gets out or jail he wants to get a legitimate job such as becoming a truck driver- Id. at 21.

After argument from counsel, this Court imposed its sentence as follows. On docket 5110-2013, Smith was sentenced to an aggregate term of six years and three months' to 14 years' imprisonment. Id. at 44 - 43. Then at docket 753-2016, this Court sentenced Smith to a term of 27 months to six years. This latter sentence is to run consecutive to the former, with a total aggregate sentence of ٤ight-and-a-half to 20 years' imprisonment. Id. at 45.

On appeal, Smith contends his aggregate sentence of eight-and-ahalf years to 20 years' imprisonment is excessive, and that this Court erred in imposill}ž consecutive sentences. Smith argues that this Court failed to consider his rehabilitaljve needs.

This is a challenge to [tie discretionary aspects ol' his sentence Ior which there is no automatic right to appeal. Commonwealth v. Marts, 889

A,2d 608 (Pa.Super. 2005) (holding thal challenge 10 the trial court's imposition of consecutive sentences is a challenge to the discretionary aspects of a sentence). Such appeals are granted at the appellate court's discretion where there is a stihstanlial question thal the sentence is nor appropriate under the Sentencing Code. 42 Pa.C.S.A. S 9781(b), A substantial question is presented where a defendant. advances a colorable claim that the trial court's sentence is inconsistent with the Sentencing Code or fundamentally contradicts the norms which underlie the sentencing process. Commonwealth v. Cleveland, 703 A.2d 1046, 1048 (Pa.Super. 1997). The determination of what constitutes a substantial question must be evaluated on a case-bycase 'basis. Commonwealth v. Paul, 925 A.2d 825 Super.2007).

In Commonwealth v. Austin, GG A.3d 798 (Pa.Super. 2013) our Superior Court has provided some guidance as to whether Smith's claim raises a substantial question.

> Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question" Commonwealth v. Prisk, 13 A.3d 526, 533 (Pa.Super.2011). see Commonwealth v. Hoag, 445 Pa.Super. 435, 663 A.2d 1212 (1995) (stating an appellant is not entitled to a 'volume discount" for his crimes by having all sentences run concurrently). In fact, this Court has

27

recognized "the imposition or consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering Ille nature ol' the crimes and the length of imprisonment." Commonwealth v. Lamonda, 32 A.3d 3651 372 Pa.Super.2012) (en banc) (citation omitted).

That is "in out' view, the key [0 resolving the preliminary substantial question inquiry is whether the decision 10 sentence consecutively raises Ille aggregate sentence to, what: appears upon its face to be, an excessive level in lighl of     criminal conduct al issue in the case." PriŠk, 13 A.'3d at 533 (quoting

Magtromarino, 2 A.3d at 587) (quotation markŠ omitted).

Austin, 66 A.3d at 808 - 809, Applying this case law to this case, it seems that Smith's issue does nor raise a substantial question.

Even assuming our Superior Court determines that Smith does raise a substantial question, this claim lacks merit and should be rejected. The imposition ol' cOnsecutivc rather than concurrent sentences lies within the sound discretion of the sentencing court. Commonwealth v. 'ohnson, 961 A,2d 877, 880 (Pa.Super. 2008) (citing, Commonwealth v. Lloyd, 878 A.2d 867, 873 (Pa.Super.2005). Factors to be considered when determining a defendant's sentence include the character Of the defendant and the particular circumstances of the offense in light of the legislative guidelines for sentencing. Commonwealth v. Scott, 860 A.2d 1029, 1032 (Pa.Super. 2004). The sentence imposed must be consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant. Id. Mental illness is clearly a factor that may be considered in sentencing. However, there is no mandatory reduction or modification in a defendant's sentence that could be imposed. Commonwealth v. Diaz, 867' A-2cÍ 1283, 1287 (Pa.Super. 2005).

Where the sentencing judge had the benefit of a presentence investigation report, il will be presumed Thal lie "was aware ol' relevant information regarding the defendant's character and weighed those considerations along with mitigating stalulory factors." Commonwealth v.

29

Devers, 546 A.2d Il, [8 (Pa. 1988). Further, "lhlæanp; been IQ111y informed by the presentence report, thë sentencing court's discretion should riÕt be disturbed." Devers, 546 A."2d at 18; see also, Commonwealth v. Egan, 679 A.2d 237, 239 (Pa.Super. 1996) (The court is required to place its reasons for the sentence on the record and this requirement can be satisfied by indicating it has reviewed a pre-sentence report). This Court placed its reasons for the sentence imposed on the record in relevant part as follows:

> Well, the Court does have the benefit of a lot of information concerning sentencing of this particular defendant, having heard the bench trial, receiving two presentence investigations and reports, which actually pretty much mirror each other except for the different factual patterns set forth for the criminal conduct. I have also reviewed the Sentencing Code and considered the information supplied today through counsel by way of testimony and argument.
>
> I will look at the presentence investigation and reports for a moment.
>
> At the time of these reports the defendant was 26 years old. Two dependents are listed. High school diploma. He did indicate to the presentence investigator, as Mr. Flick said, with some candor that he started selling drugs at the age of' 14; that he sold heroin, crack cocaine and marijuana; that he sold drugs to support himself. He indicated it was an easy way to make money. He estimated he made approximately $60,000 in the year prior to his arrest.
>
> And he mirrors that in the other report also, where he admitted to selling drugs to support himself and his giflfriend, and using [he gun for protection.

30

Now, there is a criminal history and ill is somewhat significant. Ile first got in trouble as a juvenile, October He was adjudicated delinquent, receiving stolen property, conspiracy offense. 2004,

the crime was possession ol' a weapon on school property. Del'enclanl was adjudicated delinquenl.

Mr. Flick argues that he has no history of violence. That's a pretty serious offense with a great potential for violence, possessing a weapon on school property.

He was adjudicated delinquent again in 2006 for a drug offense and disorderly conducU 2007, Drug Act possession; adjudicated delinquent. And later in 2007, possession With intent to deliver, an ungraded felony. That's a significant crime for a juvenile. He then repeats as an adult.

As an adult, 2008, criminal conspiracy. Placed on probation and later violated probation on two occasions at least, or three - two, I think. 2010, that's when he received his state prison sentence, two to four years, violation of the Drug Act, possession with intent to deliver, an ungraded felony.

The fact that he's facing a pending state parole violation is not to his benefit. He knew he was on state parole when he committed the instant offense, and he knew what the state prison was ail about.

The first offense we have is from June 2-13. He was convicted after that in 2014, false identification, a one year probation, He has a couple cases pending yet.

His family situation and background are set forth. That was supplemented by the defendant's testimony today. We heard about his not-soAvonderfí11 childhood, being born Bronx, New York, and later bejng rajsecl in Pottstown.

The report also speaks about Melissa Griffin. They have been together some two years. She had been employed as Certified Nursing Assistant. She's also the mother of children of his, of daughter. Then he has a second child by a different lady.

The defendant admitted he started using marijuana on a daily basis al the age of 15. lie started using Percocet alid syrup at the age of 18. He said he used a lot of syrup every day, and eventually stopped the Percocet and syrup in 2013, 2014. In 2007 he was using cocaine and Xanax on a daily basis.

He did graduate from Pottsgrove High School in the Pottstown area. He attended the Western Montgomery County Technical School for part of the day. There were some problems With truancy and insubordination and assaultive behavior in school.

The Court herc is dealing with a defendant, who has, Simply stated, led a life oc crime, He had led a life of committing rather serious crimes, crimes that pose a significant harm and danger to other people and to the community, crimes involving addiction, distributing heroin, a situation that costs society and the police time and money to a considerable degree. As indicated previously by this Court, he admits to long-term selling of controlled substances for profit.

It $eemŠ fairly obvious that consecutive sentences are certainly justified here. These are a number of separate crimes. Most certainly, the separate crime of possessing a firearm without a license is the most serious offense. I think it's obvious that combing drugs and guns makes a dangerous situation more dangerous. Involving the situation that he was on state parole at the time, that certainly is not a mitigating factor. That is something that I think also works

against the defendant's argument for all concurrent sentences.

He certainly presents an undue risk of committing new crimes when not incarcerated. Ile has a pattern ol' that already somewhat established. I Think he presents a clear and present danger of reverting to his criminal activity when released. Consecutive sentencing is necessary 10 protect [lie public and society from edefendant's criminal conduct. There is nothing that has been presented, although I have considered it all, including his childhood and his testimony, that convinces me that a concurrent set or sentences are appropriate. I have reviewed the various factors that I think are supportive or consecutive senrencing. In short, the length and breadth ol' this life ol' crime in
the current criminal actiV1ty we are dealing with supports protecting the public through a series of consecutive sentences.

(Sentencing 12/14/17 pp, 39 - 44. ThiŠ Court provided its rea$ons for the sentence it fashioned in Smith's case. Specifically, this Court considered the presentence investigation and reports, the testimony of both the Commonwealllf$ witnesses and that of Smith, the sentencing guidelines and sentencing code. This Court in particular addressed the need for consecutive sentencing as opposed to concurrent. Accordingly, this sentence is proper.

CONCLUSION

Based on the foregoing analysis, the judgment of sentence imposed on December 14, 2016, should be affirmed.

33

BY THE COURT:

COURT OF COMMON PLEAS

LOJL;,

WILLIAM R. CARPE r•ER J.
MONTGOMERY COUNTY
PENNSYLVANIA
38'" JUDICIAL DISTRICT

Copies sent on. March 29, 2017
By Interoffice Mail to:
Court Administration
Raymond Roberts, Esquire